David R. **JOLIVET**, Plaintiff–Appellant,

v.

Gary W. **DELAND**, **Gerald L. Cook, Tom T. House, Craig Bott, Craig Rasmussen, Ken Halderman, David Vincent, Byron T. Knighton, John Does 1–5, all personally and in their official capacities, Defendants-Appellees.**

No. 91–4126.

United States Court of Appeals, Tenth Circuit.

June 4, 1992.

---

5. The Grynbergs do not argue that the California court abused its discretion in awarding these costs or that the award was otherwise barred by statute or rule.

6. As an alternative, the California appeal was also in the nature of a dischargeability hearing. In April 1982, the Grynbergs' Second Modified Joint Plan of Reorganization (the Plan) was confirmed by the bankruptcy court. Appendix at 110: *In re Grynberg*, Nos. 81 B 00821, 81 B 00825, Order Confirming Plan at 2 (Bankr. D.Colo. April 21, 1982). Among other things, the Plan provided that, with respect to the Danzig claims and any other disputed claims (as defined in the Plan), the Grynbergs would "not be discharged from liability ... except by payment, settlement or final resolution ... in favor of the [Grynbergs]." Appendix at 105–06. (Jack Grynberg had previously deposited funds

with the court sufficient to protect the Danzigs' interests. These funds continued on deposit pending allowance or disallowance of the claims of the Danzigs by the court.) Thus, pursuant to the Plan itself, the California appeal was tantamount to a dischargeability hearing under 11 U.S.C. § 523(c): if the Danzigs won on appeal, their claims would be paid; if they lost, their claims would be discharged. *See* 9 *Collier on Bankruptcy* ¶ 7001.09 (with certain exceptions not applicable here, state courts have concurrent jurisdiction with the bankruptcy court over question of whether debts are dischargeable under 11 U.S.C. § 523(a)).

A proceeding to determine the dischargeability of a debt, like a proceeding to determine the validity of a lien as discussed above, is an adversary proceeding after which costs may be awarded. Bankr.R. 7001; *Collier on Bankruptcy* ¶¶ 7001.01, 7001.09; Bankr.R. 7054(b).

David R. Jolivet, pro se.

R. Paul Van Dam, Utah Atty. Gen., Debra J. Moore, Asst. Atty. Gen., Salt Lake City, Utah, for defendants-appellees.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff David R. Jolivet appeals from an order of the district court, awarding him $250.00 in compensatory damages against Defendant Craig Rasmussen, and denying punitive damages. We affirm.[1]

In his complaint, filed pursuant to 42 U.S.C. § 1983, Jolivet, then an inmate at the Utah State Prison,[2] alleged various claims against Defendants, employees of the Utah Department of Corrections (DOC). Defendants' motions for summary judgment were granted in full except for Jolivet's claim against Rasmussen for violation

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Jolivet has since been transferred to the Federal Correctional Institution at Lompoc, California. In an affidavit, Jolivet stated he was told he was transferred to the federal system because of the lawsuits he has filed and because he was a troublemaker.

of his right to privacy under the First and Fourteenth Amendments.[3]

The individuals involved in this claim are as follows: Jolivet is a Canadian national serving a life sentence. Sam Stevenson was a fellow inmate. Dorothy Pacheco was a member and was possibly in charge of an inmates' rights organization, "Pepper," which assisted inmates in obtaining legal redress for their grievances. Prison officials suspected that members of Pepper were also involved in organizing illegal activities which were to be directed against the DOC. Although their relationship at the time of this incident is unclear,[4] Pacheco and Stevenson were married at some point and were later divorced. Pacheco and Jolivet married sometime after the divorce was final. *See Jolivet v. Steele*, Unpublished No. 91–4065, slip op. at 2 (10th Cir. April 30, 1992) [962 F.2d 17 (Table)]. Defendant Rasmussen is an investigator with the Investigations Bureau of the DOC.

The facts giving rise to this claim are as follows: Jolivet was romantically interested in Pacheco and they had been exchanging love letters. Rasmussen made photocopies of three love letters written by Jolivet and addressed to Pacheco. Rasmussen showed the copies to Stevenson. Jolivet alleged he was not told the letters had been copied or that Stevenson had been shown the copies.[5] Although the record is not clear, the letters appear to have been mailed to Pacheco after the copies were made. Jolivet alleged he learned about the incident approximately two months later from Pacheco after she was told about it by Stevenson.

At a hearing before the magistrate judge, Rasmussen testified that at the time of the incident,

we were concerned ... about the activities of an organization which we believed him [Jolivet] to be a part of. We were only peripherally informed about its activities and some of the information we had led us to view them with a great deal of suspicion, perhaps even anxiety about some of the activities that they were involved in.

R. Vol. II, Tr. of Hearing of March 31, 1988, at 44.

Regarding his decision to make copies of Jolivet's letters and show them to Stevenson, Rasmussen testified that

[t]here were probably several motivating factors. It wasn't a decision I arrived at lightly, but we knew that Sam Stevenson was deeply involved with the group was in fact married to the then leader of the group and would be aware of their activities in exchange for a piece of—or some pieces of very valuable information to him he agreed to tell us and in fact did tell us many of the activities of the organization that these people were members of.

.    .    .    .    .

I told him [Stevenson] that I was not interested in hearing about day-to-day casual activities of this group because I in fact endorsed the organization like this following the legal procedures to get a ... regress [sic] for their legitimate grievances. But, I said if there is every [sic] any indication of any of these people where there are plans to injure or maim members of corrections or another person for that matter or blow up buildings or cause any other illegal disruption to the system, that I wanted to hear about that and he agreed that he would do that.

*Id.* at 46–47.

The magistrate judge recommended that judgment be entered for Jolivet. The mag-

---

3. Jolivet does not contest the district court's dismissal of the remaining Defendants or of his other claims against Rasmussen.

4. In the record, Pacheco is variously referred to as Stevenson's wife, his estranged wife, and his ex-wife.

5. Our review of the record indicates that Jolivet may not have received any of the constitutional due process protections due him. *See Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194,

3198, 82 L.Ed.2d 393 (1984) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)); *Procunier v. Martinez*, 416 U.S. 396, 417, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) ("decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards"). Jolivet did not include this issue in either his complaint or any of his amended complaints, and we will not address it sua sponte.

istrate judge noted that under *Procunier v. Martinez,* 416 U.S. at 413–14, 94 S.Ct. at 1811 some legitimate censorship of inmate mail is proper. The magistrate judge held, however, that Rasmussen had clearly violated Jolivet's right to privacy in his mail. He determined that Jolivet had "a reasonable expectation that [his] innocent letters w[ould] not be used for general investigative purposes." R. Vol. I, tab 222, [magistrate judge's] Report and Recommendation at 25, n. 9. Further, the letters were only disclosed in order "to 'turn' [Stevenson] into an informant because of possible anger towards plaintiff." *Id.* at 29. The district court adopted the Report and Recommendation and ordered further proceedings on the issue of damages.

Jolivet sought damages of $2,500.00 for each of the three letters as compensation for the chilling effect Rasmussen's actions had had on his ability to correspond by letter. He sought an additional $25,000.00 in compensatory damages for physical pain and mental anguish and $50,000.00 in punitive damages. The magistrate judge recommended awarding $250.00 as compensatory damages and denying punitive damages.[6] The district court adopted the recommendation, and Jolivet appeals.

On appeal, Jolivet argues that the district court erred in not awarding the damages he requested. He argues that the award did not comport with the "record, dispositive rules and law" and that punitive damages should have been awarded in accordance with *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Jolivet also argues that the amount of damages should have been decided by a jury.

"Trial courts are vested with broad discretion in awarding damages, and appellate courts do not lightly engage in a review of a trial court's actions." *Hoskie v. United States,* 666 F.2d 1353, 1354 (10th Cir.1981). The purpose of § 1983 damages is to provide compensation for injuries caused by the violation of a plaintiff's legal rights. *Memphis Community School Dist. v. Sta-*

chura, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). No compensatory damages may be awarded absent proof of actual injury. *Id.* at 308, 106 S.Ct. at 2543; *see also Carey v. Piphus,* 435 U.S. 247, 255, 264, 98 S.Ct. 1042, 1048, 1052, 55 L.Ed.2d 252 (1978) (damages available under § 1983 for actions determined " 'to have been violative of ... constitutional rights *and to have caused compensable injury* ....' ") (quoting *Wood v. Strickland,* 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975)). Further, such an award "must be proportional to the actual injury incurred." *Piver v. Pender County Bd. of Educ.,* 835 F.2d 1076, 1082 (4th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2847, 101 L.Ed.2d 885 (1988).

In support of his request for damages, Jolivet submitted two sworn affidavits and referred to medical records previously submitted. Jolivet stated that he had suffered two heart attacks caused by the stress he experienced from the incident. He also stated that as a result, he now has permanent heart problems.

Jolivet also alleged damages caused by the emotional distress he experienced from the incident itself. He alleged additional stress due to prison officials' attempts to house him in a cell next to Stevenson, who had previously told Jolivet he was placed in a maximum security facility because he had hit a man with a shovel causing him to lose an eye. Jolivet also alleged increased stress when he was denied psychological counsel after seeking help dealing with his emotional distress. He stated he was denied help because the counselor thought he had concocted the story about Rasmussen copying his mail and showing it to Stevenson. Jolivet also alleged emotional distress due to indirect death threats and ultimatums to end his relationship with Pacheco which he believed came ultimately from Stevenson.

Jolivet submitted no evidence showing that his heart problems resulted from his emotional distress. The magistrate judge

---

6. The magistrate judge noted that damages were not available against Rasmussen in his official capacity and that, therefore, Jolivet could only recover against Rasmussen in his individual capacity. Jolivet does not challenge this ruling.

properly denied damages based on Jolivet's heart problems. Further, we find no error in the determination that Jolivet did not prove that Rasmussen was involved in the attempt to house him next to Stevenson, did not prove that he was denied psychological counseling, or that he had failed to identify the source of the threats against him in more than a conclusory manner.

■ Damages may be awarded for mental and emotional distress, however. *Carey*, 435 U.S. at 263–64, 98 S.Ct. at 1052. Such damages "will not be presumed, but they are easily proved by testimony 'showing the nature and circumstances of the wrong and its effect on the plaintiff.'" *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 829 (1st Cir.1987) (quoting *Carey*, 435 U.S. at 264, 98 S.Ct. at 1052).

■ The magistrate judge, citing to *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986), noted that compensatory damages have been awarded for emotional distress resulting from interference with an inmate's mail. The magistrate judge found that Jolivet had sufficiently detailed the emotional distress he suffered to establish that he had experienced actual injury. Because of the "sparce proof" Jolivet offered, however, the magistrate judge recommended that Jolivet be awarded only $250.00 as compensatory damages. While we might have been inclined to award a greater amount, we cannot say that the district court abused its discretion in adopting the magistrate judge's recommendation.

■ Jolivet also argues he should have been awarded punitive damages. Punitive damages are available in § 1983 actions. *Smith v. Wade*, 461 U.S. at 35, 103 S.Ct. at 1629 (citing *Carlson v. Green*, 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15

(1980)). However, punitive damages are to be awarded only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56, 103 S.Ct. at 1640. The focus must be on whether the defendant's actions call for "deterrence and punishment over and above that provided by compensatory awards." *Id.* at 54, 103 S.Ct. at 1639.

■ Jolivet did not show that Rasmussen either acted with malice or knew his actions were unconstitutional. Rasmussen testified that he thought his actions were permissible. The fact that a defendant's actions were objectively unconstitutional is not considered when determining whether to award punitive damages. "[A]n award of punitive damages requires an assessment of [the defendant's] *subjective* state of mind." *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir.1989). The fact that Rasmussen stopped his actions after he was informed they were unconstitutional further supports the finding that Rasmussen did not act with malice towards Jolivet. No abuse of discretion occurred in the denial of punitive damages.

■ Finally, Jolivet argues that the issue of damages should have been decided by a jury. Jolivet did not demand a jury as required by Fed.R.Civ.P. 38(b).[7] A party waives the right to a jury trial when he fails to make a timely demand under Rule 38(b). *See* Fed.R.Civ.P. 38(d)[8]; *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980). The court does have discretion to order a jury trial later upon motion by a party. *See* Fed.R.Civ.P. 39(b).[9] Jolivet did not file any motion pursuant to Rule 39(b).

7. Rule 38(b) provides that

a party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

8. Rule 38(d) provides that the "failure of a party to serve a demand as required by this rule ... constitutes a waiver by the party of trial by jury."

9. Rule 39(b) provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

The fact that Jolivet is proceeding pro se does not entitle him to special consideration under Rule 38.[10] *See Washington v. New York City Bd. of Estimate,* 709 F.2d 792, 798 (2d Cir.) ("rule of waiver has been applied to pro se litigants"), *cert. denied,* 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983); *see also Scharnhorst v. Independent Sch. Dist. # 710,* 686 F.2d 637, 641 (8th Cir.1982) (pro se plaintiff made no demand for a jury trial in complaint and thus waived right to jury trial), *cert. denied,* 462 U.S. 1109, 103 S.Ct. 2459, 77 L.Ed.2d 1337 (1983); *McCray v. Burrell,* 516 F.2d 357, 371 (4th Cir.1975) (pro se litigant waived right to jury trial under Rule 38(d) when he made no demand for jury trial in complaint and made untimely oral request), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *But see Lewis v. Thigpen,* 767 F.2d 252, 257–59 (5th Cir.1985) (pro se litigant's claim of ignorance of the rules, if credible, sufficient for trial court to grant jury trial pursuant to motion made under Rule 39(b) which should be favorably received).

Therefore, while "the pleadings for *pro se* plaintiffs alleging civil rights violations are treated with greater liberality," *Favors v. Coughlin,* 877 F.2d 219, 220 (2d Cir. 1989), the "rule that *pro se* plaintiffs' pleadings must be less stringently construed cannot overcome the appellant's actual failure to notify appellees of his jury trial demand. Hence, because appellant did not comply with Rule 38 he waived his right to trial by a jury," *id.* at 221.

Jolivet made no mention of any desire for a jury trial until he filed his objections to the magistrate judge's Report and Recommendation on the damages issue. His desire for a jury trial on damages at that time cannot, even under the liberal construction afforded pro se litigants, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), be construed as a Rule 39(b) motion. The district court did not err in not holding a jury trial on the issue of damages.

The judgment of the United States District Court for the District of Utah is AFFIRMED.

---

**10.** Jolivet had appointed counsel at the beginning of this action. Counsel was allowed to withdraw for reasons not disclosed in the record, and Jolivet proceeded pro se.