**B. E. SWEATT, Jr.**

v.

**UNITED STATES NAVY.**

**Appeal of Sebastian K. D. GRABER.**

**No. 81–2073.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 19, 1982.

Decided May 28, 1982.

Sebastian K. D. Graber, Alexandria, Va., pro se.

Charles F. Flynn, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., at the time the brief was filed, and Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM and GINSBURG, Circuit Judges, and EDMUND L. PALMIERI,* United States Senior District Judge for the Southern District of New York.

Opinion PER CURIAM.

Dissenting opinion filed by Circuit Judge GINSBURG.

PER CURIAM:

The facts of the case before us present a sorry tale of the efforts of officials of the United States Navy to comply with the disclosure mandates of the Privacy Act, 5 U.S.C. § 552a (1976). In 1976 B. E. Sweatt, Jr., an enlisted sailor with the United States Naval Reserve, requested through an intermediary access to certain Naval records concerning him seen in the possession of a Dr. Julian Ho. Dr. Ho was in 1976 an examining physician at the National Naval Medical Center (NNMC) in Bethesda, Maryland, and in this capacity he had treated Sweatt during the latter's involuntary hospitalization. While treating Sweatt, Dr. Ho compiled and used a file of information that has become known as the "Ho File." Mr. Sweatt first demanded access to this file in 1976; four years and two trips to this court later, the Navy released the Ho File to Sweatt. This delay notwithstanding, the sole question that we must resolve in the instant case is whether, for the purposes of the attorneys' fees provision of the Privacy Act, it can be said that Sweatt "substantially prevailed" in litigation that culminated in the release of the Ho File. Although we wish in no uncertain terms to condemn the Navy for the bureaucratic runaround it has given Sweatt, we conclude that he did not "substantially prevail" for Privacy Act pur-

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

poses, and we therefore affirm the district court on its denial of attorneys' fees to appellant Sebastian K. D. Graber, Sweatt's court-appointed counsel.

## I.

In January of 1976 Sweatt filed a *pro se* complaint in the district court alleging various violations of his rights by the Navy. Headed "Complaint of Libel," this pleading contained no claim cognizable under the Privacy Act. While the *pro se* action was pending, Sweatt was hospitalized during April and May of 1976 at the NNMC, where he was treated by Dr. Ho. During his confinement at NNMC, Sweatt became aware through his sister, Linda Sweatt Cleveland, of the Ho File. Acting under Sweatt's power of attorney, Ms. Cleveland in May of 1976 wrote to the Commanding Officer of the NNMC and requested access to various records, including the Ho File.[1] In early June, a Navy attorney at NNMC advised Ms. Cleveland that the "correspondence file" she had requested had been returned to the Naval Air Reserve Unit (NARU), Naval Air Facility, Andrews Air Force Base; that attorney in turn recommended that Ms. Cleveland contact NARU regarding the Ho File.[2] It is undisputed that at the time the initial request for access was made by Ms. Cleveland, the Ho File was held by officials at NNMC; indeed, the cover letter returning the file to NARU noted that Sweatt and his sister had made such a request.[3] Neither Ms. Cleve-

land nor Sweatt subsequently sought the Ho File from NARU, however, notwithstanding the suggestion contained in the June letter.

In early August of 1976, Sweatt himself filed a request with the Chief of Naval Personnel, Department of the Navy, for a copy of his personnel record, citing as his ground for the request "the terms of the Privacy Act."[4] The Navy responded with a statement professing inability to identify the requested records and asking Sweatt to complete a standard form that specified more precisely the character of the material sought. Again, however, Sweatt declined the proffered opportunity to pursue the course suggested by the Navy, and the Ho File remained in Navy hands.

Meanwhile, back at the district court, the district judge dismissed Sweatt's "Complaint of Libel" on September 30, 1976, for failure to state a claim on which relief could be granted.[5] On direct appeal of that dismissal, this court in early 1978 reversed and remanded the case with directions that an answer be filed by the Navy.[6] On March 13, 1978, Sweatt filed an amended *pro se* complaint that listed thirty-one "invasions" of his rights. Two of the claim headings included in the complaint were "Claim Five: Invasion of Privacy" and "Claim Nine: Violations of the Privacy Act."[7]

Of the three counts of Sweatt's Claim Five, only one is relevant here. Count Two of that Claim alleged that the Navy illegally collected information relating to Sweatt

---

1. *See* Letter of May 24, 1976, from Linda S. Cleveland to Admiral D. Earl Brown, Jr., Commanding Officer, National Naval Medical Center (NNMC), Appendix (App.) at 1–2.

2. *See* Letter of 4 June 1976, from Walter J. Landen, Lieutenant Commander, Judge Advocate General's Corps, to Linda S. Cleveland, App. at 3–4.

3. *See* Memorandum of 4 June 1976 from John J. Geer, Jr., Lieutenant Commander, Assistant Chief, Legal Service, NNMC, to Commanding Officer, Naval Air Reserve Unit, Naval Air Facility, App. at 9. As the dissenting opinion notes, dissenting opinion at 1 n.1, this Memorandum stated that "Petty Officer Sweatt and his sister ... requested access to [the returned materials]."

4. *See* Letter of August 3, 1976, from B. E. Sweatt, Jr., to Chief of Naval Personnel, Department of the Navy, App. at 5.

5. As the Navy notes, Sweatt's "Complaint of Libel" was filed months before his confinement at NNMC and thus beyond peradventure contained no claims under the Privacy Act that bear on nondisclosure of the Ho File. Brief for Appellee at 3 n.4.

6. *Sweatt v. United States Navy*, No. 76–2152 (Jan. 27, 1978) (per curiam).

7. Plaintiff's Amended Complaint, *Sweatt v. United States Navy*, No. 76–0048 (D.D.C. filed Mar. 13, 1978), App. at 10–12.

and later wrongly refused to grant him access to that information; specifically, the Count pointed to the "refusal to allow [Sweatt] or his sister ... to examine ... [the] file witnessed in the hands of Lt. Ho ...."[8] As for the claims advertently based on the Privacy Act, neither of the two counts under Claim Nine involved the Ho File. Count One under Claim Nine alleged a wrongful Navy refusal to release raw data from psychological testing, while Count Two charged the Navy with wrongfully secreting a document that allegedly authorized Sweatt's discharge from the armed forces.

The Navy moved to dismiss the amended complaint in late 1978, and in January of the following year the district judge granted the motion, citing Sweatt's failure to respond to the Navy's papers. Sweatt again appealed the dismissal, and this court once again reversed and remanded, ordering that counsel be appointed to assist Sweatt in his action.[9] Sebastian K. D. Graber, appellant in the instant case, entered his initial appearance on behalf of Sweatt on October 22, 1979.

After the district judge vacated the order of dismissal, counsel for Sweatt was permitted to file a response to the Navy's motion to dismiss of the prior year. On November 19, 1979, appellant filed on Sweatt's behalf a Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss in which the grounds for relief arguably contained within the four corners of Sweatt's amended complaint were parsed. In his Memorandum Sweatt contended that the Navy had wrongfully refused to release to him "medical documents and other information pertaining to plaintiff";[10] although the vast majority of pages and observations were devoted to other than Privacy Act matters, the Memorandum did conclude with the request that the district court "retain jurisdiction of the Privacy Act claims ...."[11] The Memorandum did not, however, specify the precise nature of the Privacy Act claims asserted, and it noted that it might later be necessary to alter the amended complaint to encompass the contentions contained in the Memorandum.[12]

Such an alteration indeed proved necessary, and on February 12, 1980, the district judge granted Sweatt leave to amend further his complaint. Three days later, however, the Navy finally decided to release to Sweatt, through his appointed counsel, a copy of the now-celebrated Ho File. Sweatt continued to prosecute his claims, however, and on March 3, 1980, he filed a second amended complaint that included several Privacy Act claims. Under a Notice of Filing submitted on June 12, 1980, the Navy filed with the district court copies of Sweatt's service and medical records and a copy of the Ho File, noting that all three sets of documents had previously been supplied to Sweatt.

Pursuant to a motion for summary judgment filed by the Navy in October of 1980, the district court at long last disposed of Sweatt's claims on the merits on November 20, 1980. On that date, the trial judge granted the Navy's motion for summary judgment; in the Memorandum Opinion accompanying the summary judgment order, the district judge declined the opportunity to make any ruling on whether the Navy had violated the Privacy Act with its delayed release of the Ho File.[13] Rather, as the only remedy for nondisclosure under that Act is an injunction ordering disclosure and as all non-exempt documents had already been released, the district judge correctly found it unnecessary to express a

8. *Id.* at 2, App. at 11.

9. *Sweatt v. United States Navy*, No. 79–1094 (June 7, 1979) (per curiam).

10. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss at 3, *Sweatt v. United States Navy*, No. 76–0048 (D.D.C. filed Mar. 13, 1978), App. at 22.

11. *Id.* at 18, App. at 23.

12. *Id.* at 2, App. at 21.

13. *See* Memorandum Opinion, *Sweatt v. United States Navy*, No. 76–0048 (D.D.C. Nov. 20, 1980), App. at 41–45.

view on the interplay of the Ho File and the Privacy Act. Thus, there is no judicial finding that Sweatt has prevailed on any Privacy Act claims.

In July of 1981, appellant Graber moved the district court for an award of attorneys' fees and costs pursuant to 5 U.S.C. § 552a(g)(3)(B) (1976). The Navy resisted the motion, contending essentially that Sweatt could not be said to have "substantially prevailed" in litigation in light of the Navy's voluntary, albeit tardy, release of the Ho File. The district judge agreed with the Navy and ruled, without explanation, that Sweatt had not "substantially prevailed." [14] This appeal ensued.

## II.

The respective positions of the parties are relatively simply stated. Appellant argues that Sweatt must be held to have "substantially prevailed" in Privacy Act litigation given the *post hoc, ergo propter hoc* nature of the course of events; as Sweatt had filed in 1978 a complaint that included claims premised on the Privacy Act and as the Navy subsequently released certain of the requested documents, Sweatt "prevailed" for the purposes of the Act. Appellant contends that *he* is entitled to fees, notwithstanding his comparatively late entry into the fray, on the basis of the quick success he generated for Sweatt; although Sweatt had sought the Ho File for three years, appellant contends, it was only upon the entry of counsel and the accordant focusing of attention on the Privacy Act claims that Sweatt achieved any satisfaction from the Navy.

The Navy, by contrast, contends that Sweatt cannot be said to have "substantially prevailed" since at the time the Ho File was released there was pending no Privacy Act claim that related to that file. Rather, the Navy submits that the complaint pending at the time of the surrender of the Ho File stated only a claim for damages and was not an action under the Privacy Act for access to records. Therefore, appellee argues, the causal nexus between the litigation and the release of the Ho File required for an award of attorneys' fees is nonexistent. Although we are hesitant to place anything resembling a judicial imprimatur on the obdurate conduct of the Navy in its dealings with Mr. Sweatt, we cannot agree that Sweatt "substantially prevailed" for the purposes of the attorneys' fees provision of the Privacy Act.

Cases construing the identical attorneys' fees provision in the Freedom of Information Act (FOIA), which we agree are apposite as well in the Privacy Act context, have established the doctrines that control the disposition of this case. Even a cursory examination of Sweatt's circuitous path through the district court reveals that he was singularly unsuccessful in the prosecution of his claims. As appellant correctly notes, however, a judicial order directing the release of documents is not a prerequisite to an award of attorneys' fees under either the FOIA or the Privacy Act; rather, we have read the "substantially prevailed" standard as not precluding the recovery of attorneys' fees "where the government, after commencement of the litigation, [has] acted to moot the action by supplying the material sought." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C.Cir.1977) (FOIA context). *Accord, Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 708–10 (D.C.Cir.1977). Thus, appellant is not barred from the award of a fee simply because the Ho File was not produced as a result of a judicial order.

On the other hand, we have made it clear that "an allegedly prevailing complainant must assert something more than *post hoc, ergo propter hoc* . . ." to ground the award of attorneys' fees. *Cox v. United States Department of Justice*, 601 F.2d 1, 6 (D.C. Cir.1979) (per curiam). Instead, in the FOIA context we have stated that the party seeking fees in the absence of a court order "must show that prosecution of the

---

**14.** *See* Order of July 31, 1981, *Sweatt v. United States Navy*, No. 76–0048 (D.D.C. Nov. 20, 1980), App. at 40.

action could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between that action and the agency's surrender of the information ...." *Id.* (citation omitted). *See Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976). The burden falls on the party seeking the fee award to persuade the court that both elements of this standard are satisfied where no court judgment ordering release exists. *Id.* The critical question is whether the court suit "actually provoked" the release of the documents. *Cox,* 601 F.2d at 7 (emphasis deleted). Finally, we note, as does the dissent, that the question whether the party seeking fees has demonstrated that the plaintiff "substantially prevailed" is an issue of fact that is subject to reversal only if clearly erroneous. Dissenting opinion at 421 n.3; *Cox,* 601 F.2d at 6–7; *see* Fed.R.Civ.P. 52(a).

Applying this generous standard of review, we cannot find that the district judge acted in a clearly erroneous fashion in declining to award appellant fees for his efforts. Although in light of the Navy's reluctance to surrender the Ho File the question facing the trial judge was likely a close one, it is apparent that the district judge was not grossly off base in finding that the litigation pending on February 15, 1980, did not "actually provoke" the release of the file.

As appellees note, the pleadings filed by Sweatt in the district court by February of 1980 did not contain a claim demanding release of the Ho File pursuant to the Privacy Act. Although we are mindful that *pro se* complaints should be liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), an admonition not too stringently to construe *pro se* pleadings is not a direction to construe them teleologically. Sweatt's initial amended complaint was fundamentally a prayer for damages; release of the Ho File, to the extent "demanded" by Sweatt, was a matter auxiliary to this primary purpose of the litigation. Thus, although Sweatt did seek the Ho File in civil discovery conducted pursuant to his amended complaint, neither counsel for Sweatt nor this court is free to transmogrify a prayer for damages based only loosely, if at all, on the Privacy Act into a claim founded on that Act for access to the Ho File.

The dispositive question, then, is whether a causal nexus existed between Sweatt's lawsuit as of February 15, 1980, and the release of the Ho File. We cannot agree with the dissent's suggestion that Sweatt "substantially prevailed" on the Privacy Act claims he purportedly attempted to state in his March 1978 amended complaint. Even upon the closest scrutiny of the 1978 pleading, only the best of hindsight permits the reader to discern a Privacy Act claim praying for release of the Ho File. As we stated above, it is true that the "Invasion of Privacy" claim contained an allegation concerning the denial of access to the Ho File, but the remedy requested was again damages for wrongful withholding. Indeed, even considering the Memorandum authored by counsel that valiantly attempted to spell out in detail the allegations made by Sweatt, the Privacy Act claims were laid out only in the barest of forms; moreover, it is not even clear that those claims relate to the Ho File. The Memorandum mentions "Privacy Act claims" without specifying to which of the three counts under Sweatt's "Invasion of Privacy" heading or the two counts styled Privacy Act violations he was referring. Again, liberal construction is not synonymous with wishful thinking.

In sum, unlike our dissenting colleague, we are unable to say that the district judge made a clear, reversible error in ruling that the complaint and papers pending in February of 1980 provoked release of the Ho File. Although we do not dismiss as mere coincidence appellant's representation of Sweatt and the release of the Ho File, analysis of the relevant trial materials prompts us to conclude that the district judge acted within a permissible zone of discretion in discerning an inadequate causal connection between the lawsuit and the surrender of the Ho File. We accordingly affirm the finding of the trial judge that Sweatt did not sub-

stantially prevail for the purposes of the Privacy Act attorneys' fees provision.

### III.

Lest our decision be read as condoning the Navy's recalcitrance in releasing the Ho File, we wish to express in no uncertain terms our disapproval of the conduct of appellee prior to the surrender of the file. Even a cursory examination of the record reveals the appallingly cavalier tone adopted by the Navy in its dealings with Sweatt. Sweatt asked the Navy to supply the Ho File to him on two occasions in 1976; he requested the file again in connection with his 1978 amended *pro se* complaint. As the dissent rightly notes, the Navy had plain notice of the information sought by Sweatt, yet four years passed before the Ho File was released.

This sort of behavior is, quite simply, unacceptable. Mr. Sweatt's sister made the initial request for the Ho File on May 24, 1976; on June 4, 1976, she was informed by the Navy that the file "has been returned" to NARU. Yet the file was returned to NARU *only on that same day.* It is thus apparent that Navy officials had in their possession both Ms. Cleveland's request and the Ho File. As we have chronicled above, the file was not released for four more years.

We could further express our disapproval of the Navy's demonstration of the finest in bureaucratic mazes.[15] We conclude with the observation that the FOIA and the Privacy Act do not exist so that government officials can construct new procedural hurdles and issue new regulations to complicate the process of information provision. Agencies, including the Navy, have a duty under the two statutes to release promptly nonexempt materials. The Navy's "hide the file" game played so effectively in the instant case is manifestly at odds with that duty.

*Affirmed.*

GINSBURG, Circuit Judge, dissenting:

The sole question on appeal is whether the district court correctly found that B. E. Sweatt, Jr., did not "substantially prevail" within the meaning of the Privacy Act when, after counsel was appointed to represent him, he gained access to certain Navy records concerning himself ("the Ho file"). Most of the relevant facts are set forth with admirable clarity in the court's opinion. I highlight below the features of the case that lead me to conclude that "[the] complainant [has] assert[ed] something more than *post hoc, ergo propter hoc,*" and to answer in the affirmative the "critical question ... whether the court suit 'actually provoked' the release of the documents," slip op. at 9 (citations omitted).

In January 1976, Sweatt filed a *pro se* complaint in the district court against the Navy. As initially framed, Sweatt's action, principally for libel, presented no Privacy Act claim.

Some months after commencement of the action, in May 1976, Sweatt requested the Ho file from the Commanding Officer, National Naval Medical Center (NNMC). At that time, the file was in the NNMC's custody. By letter dated June 4, 1976, NNMC advised Sweatt that the file had been returned to the Naval Air Reserve Unit, Andrews Air Force Base (NARU), and suggested that Sweatt contact that organization regarding release of the information.[1] Sweatt did not request the file from

---

**15.** We note with some discomfort the argument made by the Navy that, as neither Mr. Sweatt nor his sister complied with Navy regulations governing the release of documents, the Navy never became obligated under the Privacy Act to release the Ho File. Brief for Appellee at 18. Although it is true that the Privacy Act does authorize government agencies to make rules governing the release of information, we take a dim view of using those rules as a shield in Privacy Act litigation. Where a request for identifiable nonexempt information is made, it is the responsibility of the addressed agency to facilitate the release of the information—not to play "hide the file."

**1.** In the cover memorandum from NNMC returning the file to NARU, dated June 4, 1976, NNMC informed NARU that "Petty Officer Sweatt and his sister, Ms. Linda Cleveland, requested access to [the file]."

NARU. On August 3, 1976, however, he wrote to the Chief of Naval Personnel, Department of the Navy, requesting a complete copy of his personnel and medical records "in accordance with the terms of the Privacy Act." In response, the Navy sent Sweatt a form inviting him to identify more precisely the records he sought. The form asked for an explanation of the "purpose for which information or documents are needed," an inquiry Sweatt questions as inappropriate under the Privacy Act. Apparently, Sweatt never returned the form.

On March 13, 1978, Sweatt, still proceeding in court *pro se*, amended his complaint to encompass, *inter alia*, "the refusal to allow [him] to examine [the] file witnessed in the hands of Lt. Ho." He annexed to his complaint a "motion for discovery" requesting production of ten items. One of these items was the Ho file. Sweatt identified it with particularity:

> One file of documents regarding the plaintiff witnessed in the possession of Lt. J. C. Ho, National Naval Medical Center, while plaintiff was confined there, the existence of which is confirmed by letter from one Cmdr. Geer, Legal Department, NNMC to Ms. Linda Cleveland, then acting under limited power of attorney for the plaintiff.

In a further motion, filed September 11, 1978, Sweatt again sought production of "the file witnessed in the hands of Lt. Julian Ho." "Wishful thinking," *supra* 424, is not required to construe these particular references, framed by Sweatt *pro se*, as a demand, supported by the Privacy Act, for access to the Ho file.

The district court dismissed Sweatt's amended complaint.[2] This court reversed and instructed appointment of counsel to represent Sweatt. Appointed counsel entered his appearance on October 22, 1979. On November 19, 1979, in opposing the Navy's motion to dismiss, appointed counsel focused attention on Sweatt's attempt to state a Privacy Act claim, although at that point counsel was not specific about the records sought. Counsel indicated that, after consultation with Sweatt, he might seek leave to amend the complaint. In January 1980, counsel advised Sweatt of his particular and concentrated efforts to secure the Ho file from the Assistant United States Attorney. On February 12, 1980, the district court granted Sweatt leave to further amend his complaint and, on February 15, 1980, the Navy sent appointed counsel a copy of most of the Ho file.

Counsel moved for attorney's fees asserting that Sweatt had "substantially prevailed" on the access to records aspect of his case, since the Ho file was released only after counsel became involved in the case and concentrated his efforts upon securing the file. In a one-sentence order, the district court denied the motion, finding that Sweatt did not "substantially prevail," but offering no explanation for the finding.

Assuming, arguendo, that Sweatt's 1976 efforts, outside the litigation, were inadequate to require the Navy to release a copy of the Ho file, his amended complaint and motions filed in March and September 1978 notified the Navy of his continuing claim for the Ho file. The Navy remained unresponsive until appointed counsel appeared, pursued the matter vigorously with the Assistant United States Attorney, and, in February 1980, succeeded in obtaining copies of all but the first page of the file.

Recognizing that *pro se* complaints must be held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam), I believe it fair to read Sweatt's March 1978 amended complaint, particularly in conjunction with the accompanying discovery motion, as encompassing a Privacy Act claim for access to the Ho file. Sweatt's specific and repeated requests for the file in his 1978 *pro se* litigation papers gave the Navy plain notice of the information Sweatt sought nearly two years before it furnished him with copies of the documents. When, as a result of appointed counsel's efforts,

---

2. Earlier, the district court had dismissed Sweatt's initial complaint. This court reversed and remanded with instructions that an answer be filed.

Sweatt gained access to the Ho file in February 1980, it seems apparent that he "substantially prevailed" on the Privacy Act claim he attempted to state in March 1978. Because the Navy offered no persuasive explanation for withholding the file once Sweatt identified it in his *pro se* amended complaint and related motions, I would hold the unelaborated finding that Sweatt did not "substantially prevail" clear error.[3] Accordingly, I would remand for a determination whether Sweatt is entitled to an attorney's fee award covering the effort appointed counsel devoted to securing release of the file.[4]

---

3. The determination whether a plaintiff "substantially prevailed" is a finding of fact, *Cox v. Dep't of Justice*, 601 F.2d 1, 6 (D.C.Cir.1979) (per curiam), and as such can be overturned only if clearly erroneous. Fed.R.Civ.P. 52(a).

4. Eligibility for a fee does not automatically entitle a litigant to a fee award. *See Cox v. Dep't of Justice*, 601 F.2d at 7 (factors to be weighed in determining whether a plaintiff who has "substantially prevailed" is entitled to attorney's fees).