**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 17 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENN CIRCUIT

JOHN G. GOWAN,

     Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF THE AIR FORCE,

     Defendant-Appellee.

No. 96-2134

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV 90-94 LFG)**

E. Justin Pennington, Law Offices of E. Justin Pennington, Albuquerque, New Mexico, for Plaintiff-Appellant.

Maria Simon, Department of Justice, Washington, D.C. (Leonard Schaitman, Department of Justice, with her on the briefs), for Defendant-Appellee.

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

**EBEL**, Circuit Judge.

Retired Air Force Major John Gowan appeals the district court's judgment against him in this Privacy Act suit. We affirm.

# BACKGROUND

Major John Gowan ("Major Gowan") was an Air Force officer whose area of expertise was high-energy laser optical materials and technology. One of his duties was to keep current on technological improvements that may have military value. In 1982, Major Gowan reported to the Air Force a breakthrough improvement in the detection of structural flaws in materials – a method known as electronic speckle pattern interferometry ("ESPI") – which enabled the scanning of a component for defects without having to destroy the test subject. Major Gowan, however, was unable to interest the Air Force in evaluating ESPI for possible future use.

In 1986, while stationed at Kirtland Air Force Base in New Mexico, Major Gowan requested the privilege of off-duty employment with Applied Optical Systems, Inc. ("AOS"), a New Mexico corporation formed to research and market optical-related technologies, including ESPI. His request was approved by Major Randall Kehl ("Major Kehl"), Deputy Staff Judge Advocate at the Kirtland Air Force Base legal office. Later in the year, following a transfer to a different department, Major Gowan made a second request for off-duty employment with AOS. This request was approved by Major Kehl and by Major Gowan's squadron commander, Lt. Colonel Richard Steele ("Lt. Colonel Steele").

Through a subsidiary AOS marketed the RETRA 1000, a device that employs ESPI technology. Eventually the Air Force expressed interest in purchasing the RETRA 1000. Major Gowan was concerned about possible conflicts of interest. At Major Kehl's suggestion, Major Gowan disclaimed any direct or indirect financial benefit accruing from the Air Force's purchase of the RETRA 1000 from AOS.

Major Kehl still felt there might be a potential ethics problem. In the summer of 1987, he instigated a Kirtland Air Force Base Office of Special Investigations ("Kirtland OSI") inquiry of Major Gowan. The Kirtland OSI investigated Major Gowan's connections with AOS, but its report indicated no violations of law or regulations. Major Kehl, however, believed additional inquiry was necessary. He kept personal notes and legal research in a file marked "Ethics" in his desk drawer. The file did not distinguish anyone by name or other personal identifier. He also asked military attorney Major Mark Ruppert ("Major Ruppert") to investigate Major Gowan. Major Ruppert reviewed Major Kehl's Ethics file and the Kirtland OSI report, investigated AOS and ESPI technology, and, with the assistance of military attorney William Gampel ("Gampel"), interviewed Major Gowan's business partner Daniel Rondeau, also a member of the Air Force. He did not interview Major Gowan.

Major Ruppert found reason to believe Major Gowan had violated Air Force regulations regarding standards of conduct and recommended that charges be preferred against him. Gampel set up an attorney working file, kept neither by Major Gowan's name nor his social security number, with the papers collected by Majors Kehl and Ruppert. Lt. Colonel Steele signed the preferral of charges in January, 1988.

Major Gowan had been scheduled to retire from the Air Force on February 29, 1988, but the legal proceedings delayed his retirement. As a result of the delay, the corporation which had funded AOS's products pulled out of the agreement it had concluded with AOS. In addition, the charges became a topic of conversation at Kirtland Air Force Base. Colonel John P. Amor ("Colonel Amor"), Major Gowan's commanding officer, disclosed the preferral of charges against Major Gowan to certain of his staff, as well as possibly other Air Force personnel, during a telephone conference.

Knowledge of the charges also spread further than among Air Force personnel. At Kirtland, Major Gowan had befriended Dr. Thomas Hill, who was involved in litigation against the Air Force. Major Gowan became involved with Hill's case. Just before charges were preferred against him, Major Gowan complained to the Wyoming Bar that David Hickman ("Hickman"), one of the Air Force's attorneys in the Hill case, had tampered with a signature on a deposition.

As part of the response to Major Gowan's complaint against Hickman, the Air Force's second attorney, George Patrick Elder ("Elder"), provided a copy of Major Gowan's charge sheet to the Wyoming Bar to provide context in rebutting Major Gowan's charges. Major Gowan, not knowing that Elder had released the charge sheet, also informed the bar of the charges against him.

After Major Gowan's civilian counsel pointed out that Major Gowan had not received improper payments from AOS and that ESPI technology had been publicly available for over a decade, Lt. Colonel Brower and Gampel recommended withdrawing the charges. Major Kehl and Lt. Colonel Steele disagreed, but the charges were withdrawn on March 22, 1988, and Major Gowan was cleared for retirement. Because Lt. Colonel Steele was dissatisfied with the withdrawal of charges, however, he called an anonymous fraud, waste, and abuse hotline run by the Air Force Systems Command Inspector General ("AFSCIG") and reported Major Gowan's alleged improprieties. The call resulted in an inquiry to the Air Force Military Airlift Command Judge Advocate ("MACJA"), who in turn consulted Lt. Colonel Brower. Lt. Colonel Brower consulted the attorney working file and responded to MACJA, explaining the circumstances surrounding the preferral and withdrawal of charges against Major Gowan ("Brower letter"). AFSCIG concluded that the Steele complaint did not warrant investigation.

In 1987, 1988, and 1989, Major Gowan made a number of Privacy Act and Freedom of Information Act requests and sought amendment of many of the documents associated with the preferral proceeding. Before 1990, however, the Air Force did not permit amendment or the inclusion of statements of disagreement when the objectionable material was an opinion or subjective belief. The only entity that could change subjective material was the Air Force Board for the Correction of Military Records ("AFBCMR"). Air Force regulations provide no appeal from an AFBCMR decision and state that the Privacy Act provides no remedy. Air Force policy was changed in 1990 to allow the inclusion of statements of disagreement.

Two of the documents Major Gowan sought to amend resulted from his seeking the assistance of members of the United States Congress. While the charges against him were pending, Major Gowan had asked Senator Sam Nunn for assistance. Nunn sent Major Gowan's letter to the Office of the Legislative Liaison. That office's response, authored by a Colonel Nameth, was based upon the letter Brower had written in response to MACJA's inquiry regarding the Steele complaint ("Nameth letter"). Major Gowan requested the Air Force amend the Nameth letter. Two statements were amended and the remainder of Major Gowan's request was denied. Major Gowan's request to include a statement of disagreement was denied as well. Major Gowan also complained to Senator Jeff

Bingaman about the Air Force's treatment of him. Senator Bingaman sent that letter to the Air Force Legislative Liaison office and was responded to by a Colonel Alison ("Alison letter"). Major Gowan requested the Air Force amend the Alison letter. Amendment was denied, but Major Gowan's statement of disagreement was placed with the Alison letter and a copy was sent to Senator Bingaman.

Major Gowan also sought to amend several other documents, including the Steele fraud, waste, and abuse complaint, the Brower letter, and the Kirtland OSI file. The Air Force refused to amend the Steele complaint and the Brower letter on the grounds that they were not contained in Privacy Act systems of records. However, it allowed the amendment of the Kirtland OSI report to reflect what persons were in fact interviewed during the Kirtland OSI investigation.

Major Gowan filed this suit in the district court under the Privacy Act, 5 U.S.C. § 552a, on January 25, 1990. He sought injunctive relief and compensatory damages for the Air Force's refusal to amend documents or to allow him to attach statements of disagreement; its denying him access to his records despite his Privacy Act requests; its disclosures of the charge sheet; and its maintenance of inaccurate records. While the suit was pending, Major Gowan was given a copy of the attorney working file containing Major Kehl's and Major Ruppert's papers, several years after his initial request, and the AFBCMR took

action on his requests to amend. The resolution of Major Gowan's requests took over four years because his file "fell through the cracks" at the AFBCMR.

The district court, United States Magistrate Judge Lorenzo Garcia presiding by consent of the parties, see 28 U.S.C. § 636(c), tried the case without a jury. Although the court sympathized with Major Gowan's concerns, it concluded that Major Gowan had not met the requirements of the Privacy Act. The court granted judgment for the Air Force and dismissed Major Gowan's suit with prejudice. Major Gowan appeals.

## ANALYSIS

The Privacy Act of 1974, 5 U.S.C. § 552a, governs the government's collection and dissemination of information and maintenance of its records. The Privacy Act generally allows individuals to gain access to government records on them and to request correction of inaccurate records.

The Privacy Act provides four causes of action: first, for an agency's failure to review the denial of an amendment or to attach a statement of disagreement, see 5 U.S.C. § 552a(g)(1)(A); second, for an agency's denial of access to records, see 5 U.S.C. § 552a(g)(1)(B); third, for an agency's failure to maintain its records with accuracy, relevance, timeliness, and completeness to assure fairness in determinations, see 5 U.S.C. § 552a(g)(1)(C); and fourth, for an agency's failure to comply with any other Privacy Act provision which causes an

"adverse effect on an individual," see 5 U.S.C. § 552a(g)(1)(D). For the first two causes of action the court may award injunctive relief, and, if the plaintiff has "substantially prevailed," it may also award attorney's fees and costs. See 5 U.S.C. §§ 552a(g)(2), (g)(3). For the third and fourth causes of action, if the court determines the agency acted intentionally and willfully, it may award damages, attorney's fees, and costs. See 5 U.S.C. § 552a(g)(4).

## I. Requests to Amend Records

The Privacy Act provides that individuals may request access to records on them, may request amendment of those records, and may attach a statement of disagreement to the record if amendment is refused. See 5 U.S.C. § 552a(d). It further provides that if an agency refuses to review the denial of a requested amendment or to attach a statement of disagreement the individual may file suit in the United States district court. See 5 U.S.C. § 552a(g)(1)(A). The district court may order the agency to amend the record or attach the statement of disagreement, and the individual may recover attorney fees and costs if he or she substantially prevails in the action. See 5 U.S.C. § 552a(g)(2).

In the district court, Major Gowan requested the Air Force be directed to amend the Nameth letter, the Alison letter, the Steele fraud, waste, and abuse complaint, and the Brower letter. He also complained about the Air Force's handling of his request to amend the Kirtland OSI report. On appeal, Major

Gowan abandons his claims regarding the Alison letter and any argument that the Nameth and Brower letters should be amended. Instead, Major Gowan seeks only to include statements of disagreement with the Nameth and Brower letters. In its brief the Air Force submits that it is willing to and will attach statements of disagreement to the Nameth and Brower letters. In light of this representation, we assume that the Air Force has or will immediately voluntarily comply with the Privacy Act and attach Major Gowan's statements of disagreement to the Nameth and Brower letters. See 5 U.S.C. § 552a(d)(3) ("Each agency that maintains a system of records shall . . . [if amendment is denied] permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency [to amend] . . . ."). Thus, the only remaining amendment issues concern the Steele fraud, waste, and abuse complaint, the Kirtland OSI report, and the propriety of the Air Force amendment referral process.

## A.    Steele Fraud, Waste, and Abuse Complaint

The Steele complaint was processed by the Office of the Inspector General. The district court held that (1) the Steele complaint is not amendable because it is a statement of opinion, and (2) the Privacy Act does not apply because "[c]omplaints made to the Inspector General are exempt from disclosure."

Because we affirm on the second basis, we do not need to address the first reason

for the district court's ruling.

The district court correctly held that the Air Force has exempted the

Inspector General's records from § 552a(d) of the Privacy Act.  Under 5 U.S.C.

§ 552a(k)(2):

> The head of any agency may promulgate rules . . . to exempt any
> system of records within the agency from subsections (c)(3), (d),
> (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of
> records is–
> . . .
> (2) investigatory material compiled for law enforcement
> purposes, other than material within the scope of subsection
> (j)(2) of this section:  *Provided, however*, That if any individual
> is denied any right, privilege, or benefit that he would
> otherwise be entitled by Federal law, or for which he would
> otherwise be eligible, as a result of the maintenance of such
> material, such material shall be provided to such individual
> . . . .

The Air Force has promulgated a regulation to exempt Inspector General records

from disclosure under the Privacy Act.     See 32 C.F.R. Pt. 806b, App. C, § (b)(12)

(1997). [1]  Steele's fraud, waste, and abuse complaint, which alleged possible

violations of military and federal law, comes within § 552a(k)(2)'s specification

of "investigatory material compiled for law enforcement purposes."      See Viotti v.

United States Air Force  , 902 F. Supp. 1331, 1335 (D. Colo. 1995).  Although

---

[1]  This regulation was originally promulgated in 1986.     See Rules and
Regulations, Department of Defense, 51 Fed. Reg. 20,277, 20,284 (1986).

- 11 -

Major Gowan argues that fraud, waste, and abuse *complaints* do not constitute "investigatory material," the complaint is the catalyst of the investigation and thus comes within the parameters of § 552a(k)(2). Further, the charges contained in the complaint were deemed unworthy of further action, so that § 552a(k)(2)'s exception, which requires disclosure where the subject has been denied a benefit because of the record, is inapplicable. Cf. Viotti, 902 F. Supp. at 1336.

Because this fraud, waste, and abuse complaint is properly exempt from § 552a(d), Major Gowan does not have a Privacy Act cause of action to require the Air Force to amend the records or attach a statement of disagreement. "Where, as here, an agency has properly exempted its records, the agency no longer has any obligation to disclose those records--irrespective of the underlying motives of the agency or the impact of the records upon the parties." Nolan v. United States Dept. of Justice, 973 F.2d 843, 848-49 (10th Cir. 1992); see also Aquino v. Stone, 957 F.2d 139, 143 (4th Cir. 1992); Doe v. Federal Bureau of Investigation, 936 F.2d 1346, 1352 (D.C. Cir. 1991); Alexander v. United States, 787 F.2d 1349, 1351-52 (9th Cir. 1986); Wentz v. Department of Justice, 772 F.2d 335, 338 (7th Cir. 1985) ("You cannot amend a document if you don't have access to it.").

**B.     Kirtland OSI Report**

Major Gowan also contends that the Kirtland OSI report should be amended. The AFBCMR amended the report to show which individuals in fact were interviewed, but denied the remainder of Major Gowan's request to amend. The district court held that under § 552a(k)(2) the Kirtland OSI report was exempted from the provisions of § 552(d), but did not specify which § 552a(k)(2) exemption it relied upon. We agree with the district court that the Kirtland OSI report is exempted from the requirements of § 552a(d), but disagree on which exemption section to apply. However, we may affirm on any ground supported by the record. See United States v. Knox, 124 F.3d 1360, 1362 (10th Cir. 1997).

None of the specific exemptions promulgated under § 552a(k)(2) seems to apply to the Kirtland OSI report. See 32 C.F.R. Pt. 806b, App. C(b) (1997). Besides the specific exemptions enumerated in 5 U.S.C. § 552a(k)(2), however, the Privacy Act provides that law enforcement materials generally may be exempted from otherwise applicable Privacy Act requirements. See 5 U.S.C. § 552a(j)(2). The general exemption section, § 552a(j)(2), states:

> The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is–
> . . .
> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to

- 13 -

prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of . . . (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual . . . .

The Air Force has promulgated regulations under § 552a(j)(2) exempting certain material from the requirements of § 552a(d), including "Investigative Support Records" and "Criminal Records." See 32 C.F.R. Pt. 806(b), App. C(a) (1997). [2] The "Investigative Support Records" category includes "[r]eports of investigation, collection reports, statements of individuals, affidavits, correspondence, and other documentation pertaining to criminal collection activities investigative surveys . . ." which are used "by AFOSI to determine if, in fact, possible criminal activity requiring further specialized investigation is occurring in a specific area" and "by USAF and other military commanders as well as Department of Justice officials to determine if judicial or administrative action is warranted." See Department of Defense System of Records Notices, 50 Fed. Reg. 22,090, 22,492 (1985). The "Criminal Records" system includes "[r]eports of investigation, statements of individuals, correspondence, and other informational material pertaining to specific investigations of alleged violations

---

[2] This regulation was originally promulgated in 1986. See Rules and Regulations, Department of Defense, 51 Fed. Reg. 20,277, 20,283 (1986).

of laws, regulations or directives" which are used "in taking judicial and administrative actions involving suspected criminal activity concerning [Department of Defense] personnel" and "to determine if legal or administrative action is warranted." See id. at 22,491.

The OSI report at issue fits both of these categories. It is located in a system of records maintained by the Kirtland OSI, a law enforcement body; it consists of information compiled for the purpose of a criminal investigation and associated with an identifiable individual; and it has been the subject of the proper rule-making procedures. Consequently, it is exempt under § 552a(j)(2). See Nolan, 973 F.2d at 847. As stated above, Major Gowan has no Privacy Act cause of action regarding exempted records, and thus he cannot challenge the Air Force's refusal to make further amendments to the Kirtland OSI report. See id. at 848-49.

## C.    Air Force Referral Process

Beyond challenging the Air Force's handling of his specific amendment requests, Major Gowan quarrels with the Air Force's amendment process itself. Before about 1990, the Air Force Privacy Act program automatically referred requests for amendment of "subjective" or "opinion" matters to the AFBCMR. Major Gowan complains that the AFBCMR did not allow the attachment of statements of disagreement or judicial review. Consequently, he seeks injunctive

relief to ensure that the Air Force complies with the provisions of the Privacy Act.

The Privacy Act clearly grants individuals the right to seek agency review of a denial of a request to amend, to file a statement of disagreement, and to seek judicial review of the agency's determination. See 5 U.S.C. §§ 552a(d)(3), (g)(1)(A). Therefore, any Air Force policy that provides to the contrary would be invalid under the Act. However, Major Gowan's Privacy Act complaints have been resolved through this judicial action, and the Air Force eliminated its nonconforming policy in about 1990. Although Major Gowan asserts that he may in the future want to seek amendment of Air Force records and that the Air Force may again wrongfully deny his Privacy Act right to seek amendment or the filing of a statement of disagreement, an assertion of such a contingent interest is insufficient to confer standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 563-64 (1992). As a result, we decline to hear his challenge to the AFBCMR referral process.

Finally, Major Gowan alleges that the Air Force failed to comply with the Privacy Act when it did not inform him of his right to seek judicial review of its denial of his requests to amend. See 5 U.S.C. § 552a(d)(3) (requiring the agency to notify the individual of the provisions for judicial review under 5 U.S.C. § 552a(g)(1)(A)). To redress violations of § 552a(d)(3), a plaintiff may secure

- 16 -

injunctive relief and, if he has substantially prevailed, recover attorney's fees and costs.  See 5 U.S.C. §§ 552a(g)(1)(A), (g)(2).  Given that Major Gowan was obviously aware of his right to seek judicial review, however, we find it unnecessary to award him injunctive relief, and we determine that he should not be awarded attorney's fees under 5 U.S.C. § 552a(g)(2)(B).

## II.  Access to Records

Major Gowan argues that the Air Force violated the Privacy Act by not turning over all materials in response to his Privacy Act request.  Specifically, he complains that he did not receive the materials contained in the attorney working file (the file set up by Gampel which included Major Kehl's "Ethics" file and Major Ruppert's papers) until more than six years after his first Privacy Act request, four years after he filed this case in the district court.

The Privacy Act grants individuals access to their records.          See 5 U.S.C. § 552a(d)(1).  However, only "records" kept in a "system of records" are subject to the provisions of § 552a(d).      See Wren v. Heckler  , 744 F.2d 86, 89 (10th Cir. 1984).  The Privacy Act defines a record as "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4).  A "system of records" is defined as "a group of any records under the control of any agency from which

information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). To redress violations of § 552a(d)(1), the district court may award injunctive relief, and, if the plaintiff has substantially prevailed in the action, attorney fees and costs. See 5 U.S.C. §§ 552a(g)(1)(B), (g)(3).

The only file in existence at the time of Major Gowan's first request was the "Ethics" file. By the time of his second request, the "Ethics" file had been incorporated into an attorney working file. The district court concluded that neither the "Ethics" file nor the attorney working file were maintained in a Privacy Act "system of records," and that those files were not retrievable by means of Major Gowan's name or other identifier. On appeal, Major Gowan argues that (1) the designate "Ethics" was in fact an identifier personal to Major Gowan, so that the "Ethics" file was part of a system of records and thus subject to the Privacy Act, and (2) even if the "Ethics" file was *not* part of a Privacy Act system of records, it *should have been* because it was used in determining Major Gowan's rights, privileges, and benefits. [3]

---

[3] In making this argument, Major Gowan does not appear to recognize that there were two files: the "Ethics" file itself and the attorney working file. Neither the parties nor the district court identify how the attorney working file was kept, but the district court found that it was not kept under Major Gowan's name or other personal identifier. Consequently, we will confine our discussion to the points raised by Major Gowan and focus solely on the "Ethics" file.

Major Gowan contends that "Ethics" was in fact a code word referring to him, and thus in effect was a "personal identifier." We recognize the possibility that an unscrupulous person may try to mask a record properly subject to the Privacy Act by labeling it with a generic code word that effectively acts as a "personal identifier." However, the testimony before the district court does not indicate that here the designation "Ethics" equals an "identifying particular assigned to the individual." Major Kehl testified that his file was "not a folder about any individual in particular," and that at the time of the investigation into Major Gowan's activities "there was other information in this file about people other than Mr. Gowan, because my evaluation of ethics issues included other people besides Mr. Gowan." On this record, we must conclude that the word "Ethics" was not a personal identifier of Major Gowan and we do not find the district court's rulings regarding those documents to be clearly erroneous. See Wren v. Heckler, 744 F.2d at 89 (documents contained in files entitled "Regional and Field Hearing Office" were not part of a "system of records" because they were not retrievable by "plaintiff's name or other identifying symbol" even though they contained information about the plaintiff); see also Hudson v. Reno, 130 F.3d 1193, 1206 (6th Cir. 1997) (notes kept in locked drawer in file labeled as "First Assistant's" file not part of a Privacy Act system of records even though they contained information about the plaintiff).

Alternatively, Major Gowan contends that the file *should* have been put into the system of records under 5 U.S.C. § 552a(e)(5) -- which directs agencies to maintain complete and accurate records to ensure fairness in determinations -- because Major Kehl, Major Ruppert, Gampel, and Lt. Colonel Brower actually used the file in making decisions about him. Although the court may award damages, attorney fees and costs upon finding that an agency intentionally and willfully failed to maintain records with such accuracy and completeness as to ensure fairness, see 5 U.S.C. §§ 552a(g)(1)(C), (g)(4), the record on appeal does not demonstrate that Major Gowan raised this issue in the district court. The district court never addressed the issue, and the pretrial report does not adequately set forth the contention that the files should have been maintained in a Privacy Act system of records. Although Major Gowan asserts that he raised the issue below in his Proposed Findings of Fact and Conclusions of Law, that filing has not been submitted as part of the appellate record. Because it is impossible to review the arguments made before the district court, we decline to address this issue on appeal. See United States v. Vasquez, 985 F.2d 491, 494 (10th Cir. 1993) ("When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue."); 10th Cir. R. 10.3 ("When the party asserting an issue fails to provide

a record sufficient for consideration of that issue, the court may decline to consider it.").

### III. Methods of Collecting Information

Major Gowan also contends that the Air Force violated the Privacy Act when the Kirtland OSI, Major Kehl, Major Ruppert, Gampel, and Lt. Colonel Brower failed to gather information from him directly rather than from third parties. See 5 U.S.C. § 552a(e)(2) ("Each agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs."). The district court may award damages, attorney fees, and costs for an intentional and willful violation of § 552(e)(2) that results in an adverse effect on the plaintiff. See 5 U.S.C. §§ 552a(g)(1)(D), (g)(4).

Major Gowan did not include this issue in the pre-trial report, and so it was not part of the case before the district court. See Hernandez v. Alexander, 671 F.2d 402, 407 (10th Cir. 1982) (pre-trial report controls course of litigation). In support of our conclusion, the district court made no ruling on this issue. We generally do not consider issues not raised before the trial court, and so we find that this claim has been waived. See Vitkus v. Beatrice Co., 127 F.3d 936, 946 (10th Cir. 1997).

## IV.  Methods of Maintaining Records

Major Gowan suggests that the Air Force's maintenance of inaccurate and incomplete records, namely the Kirtland OSI report and the "Ethics" file, violated 5 U.S.C. § 552a(e)(5), which requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  To redress intentional and willful violations of § 552a(e)(5), the court may award damages, attorney's fees and costs.  See 5 U.S.C. §§ 552a(g)(1)(C), (g)(4).  To succeed with this claim, Major Gowan must show:

> (1) he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records.

Deters v. United States Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996).

Major Gowan has no § 552a(e)(5) cause of action regarding either the Kirtland OSI report or the "Ethics" file.  As discussed above, the Kirtland OSI report is exempted from several of the requirements of the Privacy Act, including § 552a(e)(5).  See 5 U.S.C. § 552a(j)(2); 32 C.F.R. Pt. 806b, App. C(a) (1997).  Further, the "Ethics" file is not a "record" in a Privacy Act "system of records," and thus Major Gowan has no § 552a(e)(5) cause of action for Kehl's

- 22 -

maintenance of the "Ethics" report. See Clarkson v. Internal Revenue Serv., 678 F.2d 1368, 1377 (11th Cir. 1982).

## V. Dissemination of Charges

Finally, Major Gowan claims that the Air Force violated 5 U.S.C. § 552a(b) by disclosing information about the charges against him to various third parties. He contends that the Privacy Act was offended by Amor's discussion of the charges during a telephone conference with other Air Force personnel, by Elder's release of the charges to the Wyoming Bar, and by the Air Force's discussion of the charges in response to inquiries by United States senators.

Under 5 U.S.C. § 552a(b), agencies are prohibited from "disclos[ing] any record which is contained in a system of records by any means of communication to any person, or to another agency" unless they have the written consent of the individual to whom the record pertains or the disclosure fits one of twelve listed exceptions. If an agency intentionally and willfully violates § 552a(b) and the plaintiff suffers an "adverse effect" from the violation, the agency is liable for the plaintiff's actual damages as well as attorney's fees and costs. See 5 U.S.C. §§ 552a(g)(1)(D), (g)(4). Consequently, to maintain a § 552a(b) claim, a plaintiff must show: (1) the information came from a "record" in a "system of records"; (2) it was communicated to another entity; (3) the communication was without the individual's consent or does not fit one of the enumerated exceptions; (4) the

- 23 -

communication was made intentionally or willfully; and (5) the communication caused an "adverse effect" on the plaintiff. See also Pippinger v. Rubin, 129 F.3d 519, 528 (10th Cir. 1997) ("In analyzing each of these three claims, we must decide whether a record was 'disclosed,' and, if so, whether it was disclosed pursuant to an exception enumerated in 5 U.S.C. § 552a(b).").

The district court held that the preferral of charges against Major Gowan was a matter of public record and thus disclosure of the charges did not violate § 552a(b). We disagree with the district court's conclusion that a matter of public record is not subject to the provisions of 5 U.S.C. § 552a(b). In Quinn v. Stone, 978 F.2d 126, 134 (3d Cir. 1992), the Third Circuit rejected an argument that a disclosure of public information cannot violate the Privacy Act:

> Appellees have cited to this court no case that stands for the proposition that there is no violation of the Act if the information is merely readily accessible to the members of the public (such as in the local telephone book) and our research has discovered none. We doubt if any court would so hold. To do so would eviscerate the Act's central prohibition, the prohibition against disclosure. . . . To define disclosure so narrowly as to exclude information that is readily accessible to the public would render superfluous the detailed statutory scheme of twelve exceptions to the prohibition on disclosure. We conclude the making available information which is readily accessible to the members of the public is a disclosure under 552a(b), subject, of course, to the Act's exceptions.

(footnote omitted). See also United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762-64 (1989) (upholding privacy interest in rap sheet, even though components of summary are in public record). We

- 24 -

adopt the Third Circuit's reasoning and hold that an agency may not defend a release of Privacy Act information simply by stating that the information is a matter of public record.

## A.    Telephone Conference

The district court found that Colonel Amor's discussion of the charges against Major Gowan during a telephone conference with other Air Force officers and staff did not violate the Privacy Act because the charges were a matter of public record and because Colonel Amor may have had independent knowledge of the preferral of charges.

"Section 552a(b) of the Privacy Act by its terms contemplates a 'system of records' as the direct or indirect source of the information disclosed.  The disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records."    Thomas v. United States Dep't of Energy, 719 F.2d 342, 345 (10th Cir. 1983).  The Air Force indicates that Colonel Amor was Major Gowan's commanding officer and that he was kept apprised of the investigation as it progressed.  However, we need not decide whether this satisfies the "independent source" exception.    Cf. id. at 344 (supervisor's information came from personal participation in discussions about plaintiff and being told to order plaintiff to undergo psychiatric evaluation, not from plaintiff's records).

In this case the district court did not make an unequivocal finding that Colonel Amor's information was all derived independently of a record pertaining to Major Gowan found in a system of records. In any event, in order to recover, Major Gowan must prove that Colonel Amor's conduct was "intentional or willful." See 5 U.S.C. § 552a(g)(4). The district court did not make this essential finding, and thus Major Gowan cannot recover on this claim. Because of our ruling, we need not address the Air Force's argument that this disclosure can be justified under the "need to know" exception found in § 552a(b)(1).

**B.    Wyoming Bar**

Major Gowan also contends that the Air Force is liable for Elder's informing the Wyoming Bar of the court martial charges. The district court again held that the charges were public knowledge, but it also held that Elder's actions were not intentional and willful, and thus Major Gowan could not recover. However, we need not decide whether Elder's actions were intentional and willful. See Knox, 124 F.3d at 1362 (court of appeals may affirm on any ground supported by the record). To recover for a violation of § 552a(b), Major Gowan must also show that the Air Force's disclosure had an "adverse effect" on him. See 5 U.S.C. § 552a(g)(1)(D). Major Gowan himself informed the Wyoming Bar of the court martial charges without knowing Elder had already done so. Consequently, Elder's providing the same information (even though before Major

Gowan did so) could not have had an adverse effect on Major Gowan. Cf. Kline v. Department of Health & Human Serv., 927 F.2d 522, 524 (10th Cir. 1991) ("A later release of information previously known does not violate the Privacy Act.").

## C. Responses to United States Senators

Major Gowan's final complaints about improper communications concern the Air Force's responses to the letters sent by United States Senators Nunn and Bingaman. Although this issue was raised below, the district court did not resolve it.

The senators' inquiries resulted directly from Major Gowan's soliciting their assistance. Unlike in Swenson v. United States Postal Serv., 890 F.2d 1075, 1077-78 (9th Cir. 1989), where the disclosure of information to congressmen violated the Privacy Act because the information had nothing to do with the subject the plaintiff had asked her legislators to investigate, Major Gowan requested the senators to inquire about the matters he now complains the Air Force discussed with them. Under these circumstances, Major Gowan's request for the senators' assistance estops him from complaining that the Air Force responded to the senators' inquiries on his behalf. See Pellerin v. Veterans Admin., 790 F.2d 1553, 1556 (11th Cir. 1986) ("Pellerin clearly solicited his congressmen's support in his battle with the VA. He cannot state a claim against

- 27 -

the VA for releasing information to the congressmen when he requested their assistance in gathering such information.").

In addition, § 552a(b)(3) establishes a "routine use" exception to the general prohibition on disclosure. See 5 U.S.C. § 552a(b)(3). Disclosure of information regarding an individual to members of Congress in response to "an inquiry from the congressional office *made at the request of that individual*" has been established as a routine use of Privacy Act information. See Department of Defense Privacy Act Program, 51 Fed. Reg. 2364, 2389 (1986) (emphasis added). We do not believe that the dissemination of this information in response to the senators' inquiries is incompatible with the purpose for which the information was collected, see 5 U.S.C. § 552a(a)(7), and thus the disclosures would likely be protected under the routine use exception.

**D.    Attorney's Fees and Costs**

A Privacy Act plaintiff may be awarded attorney's fees and costs. For suits under 5 U.S.C. §§ 552a(g)(1)(A) and (g)(1)(B), to be eligible for fees and costs the plaintiff must have "substantially prevailed." See 5 U.S.C. §§ 552a(g)(2)(B), (g)(3)(B). For suits under 5 U.S.C. § 552a(g)(1)(C) and (g)(1)(D), there is no requirement that the plaintiff have "substantially prevailed" to be awarded fees, but the court must determine that the agency acted intentionally or willfully. See 5 U.S.C. § 552a(g)(4).

Major Gowan's success in this lawsuit was limited to getting the statements of disagreement added to the Brower and Nameth letters and in obtaining access to the attorney working file. Both of these successes come under the portions of the Act that require a plaintiff to "substantially prevail[]" in order to receive attorney's fees and costs. See 5 U.S.C. §§ 552a(g)(1)(A), (g)(1)(B), (g)(2)(B), (g)(3)(B).

In Volz v. United States Dept. of Justice, 619 F.2d 49, 50 (10th Cir. 1980), we concluded without analysis that the plaintiff had not "substantially prevailed" in his Privacy Act suit despite the fact that the agency had released some of the information after the suit was filed. We have not had occasion since Volz to determine whether a plaintiff has "substantially prevailed" for purposes of obtaining fees under the Privacy Act. However, we note that the Privacy Act attorney's fee provisions are substantially similar to the fee provision of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E). Consequently, like at least two of our sister circuits, we shall apply a FOIA attorney's fee analysis to this Privacy Act case. See Sweatt v. United States Navy, 683 F.2d 420, 423 (D.C. Cir. 1982) (per curiam) (applying FOIA principles to determine whether plaintiff "substantially prevailed" under Privacy Act); Barrett v. Bureau of Customs, 651 F.2d 1087, 1088 (5th Cir. 1981) (same); see also Clarkson, 678 F.2d at 1371 (applying Privacy Act analysis to FOIA claim for fees).

In the FOIA attorney's fee context, we have held that a plaintiff must establish both that he or she is eligible for an attorney's fee award and that he or she is entitled to it. To show eligibility for the award, the plaintiff must show that he or she has "substantially prevailed" on his claim. See Anderson v. Secretary of Health and Human Serv., 80 F.3d 1500, 1504 (10th Cir. 1996). If the plaintiff has "substantially prevailed," the court must evaluate four factors to decide whether he or she is entitled to an award: "'(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law.'" Id. (quoting Aviation Data Serv. v. FAA, 687 F.2d 1319, 1321 (10th Cir. 1982)).

The plaintiff has "substantially prevailed" in a FOIA case if the lawsuit was reasonably necessary and substantially caused the requested records to be released. See Chesapeake Bay Found., Inc. v. Department of Agriculture, 11 F.3d 211, 216 (D.C. Cir. 1993); see also Alan R. Gilbert, Annotation, Construction and Application of Freedom of Information Act Provision (5 USCS § 552(a)(4)(E)) Concerning Award of Attorney Fees and Other Litigation Costs, 36 A.L.R. Fed. 530 § 4 (1978 & Supp. 1997). However, the Air Force contends that its release of the file and its willingness to attach the statements of disagreement were not

motivated by Major Gowan's lawsuit but by new, less restrictive directives issued during the pendency of the litigation.

Even assuming that the attachment of the statements of disagreement and the release of the file were motivated by the lawsuit, so that Major Gowan is *eligible* for a fee award, under the factors we have identified he is not *entitled* to one. Although the government was not justified in refusing to act according to the clear directives of the Privacy Act, Major Gowan's suit was for his personal benefit rather than for the benefit of the public interest and he gained no commercial benefit from the attachment of the statements of disagreement or the release of the file. Given Major Gowan's limited success in this suit, especially in light of the fact that he had requested $13,300,000 in damages but received none, we do not believe he is entitled to an award of fees and costs.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.