**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 6 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

VICKIE BIELICKI; MARTA ROMANA;
CINDY VIGIL,

      Plaintiffs - Appellees,

v.

THE TERMINIX INTERNATIONAL
COMPANY, L.P.,

      Defendant - Appellant.

No. 98-2349

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-97-1194-JC)

---

Stephen E. Tinkler, Tinkler & Bennett, Santa Fe, New Mexico (Jane Bloom Yohalem, Santa Fe, New Mexico and Merit Bennett, Tinkler & Bennett, Santa Fe, New Mexico with him on the brief), for Plaintiffs-Appellees.

Malcolm E. Wheeler, Wheeler, Trigg & Kennedy, Denver, Colorado, for Defendant-Appellant.

---

Before **KELLY**, Circuit Judge, **McKAY**, Senior Circuit Judge, and **LUCERO**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

---

      The Terminix International Company, L.P., appeals from a jury verdict awarding

punitive damages based on injuries suffered by Vickie Bielicki, Marta Romana, and Cindy Vigil from a Terminix employee's spraying of a toxic pesticide in their presence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

On April 17, 1997, Bielicki, Romana, and Vigil were routinely finishing their duties as private food service workers at the New Mexico State Prison when Marquis Sanchez, a Terminix employee, sprayed a toxic pesticide called Conquer in the kitchen area causing them to become violently ill. All three plaintiffs suffered permanent, chronic injuries as a result of the exposure.

Before trial, Terminix stipulated that Sanchez had been negligent and that Terminix was vicariously liable for his negligence. Thus, the only issues tried were the amount of compensatory damages and the propriety and amount of punitive damages. The jury found in favor of plaintiffs and awarded compensatory damages of $60,700 to Bielicki, $77,800 to Romana, and $31,600 to Vigil, and punitive damages in the amount of $728,400 to Bielicki, $933,600 to Romana, and $379,200 to Vigil. Terminix's motions for a directed verdict, judgment as a matter of law, and a new trial or remittitur were denied by the district court.

## II

Denials of motions for a directed verdict and for judgment as a matter of law are reviewed de novo. See Knight v. Snap-On Tools Corp., 3 F.3d 1398, 1401 (10th Cir. 1993). Judgment as a matter of law is appropriate only "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1); see also Davis v. United States Postal Serv., 142 F.3d 1334, 1339 (10th Cir. 1998). We construe the evidence and inferences therefrom in the light most favorable to plaintiffs, the nonmoving party in this case, see Wilson v. Tulsa Junior College, 164 F.3d 534, 536 (10th Cir. 1998), and the jury's decision will be overturned only if the evidence "points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found," Zimmerman v. First Fed. Sav. & Loan Ass'n of Rapid City, 848 F.2d 1047, 1051 (10th Cir. 1988).

Under New Mexico law, "punitive damages may not be imposed on an employer for the misconduct of an employee absent some evidence that the employer in some way contributed to . . . the employee's misconduct." Campbell v. Bartlett, 975 F.2d 1569, 1582 (10th Cir. 1992). Therefore, Terminix is not liable for punitive damages unless it is shown that it "participated in, authorized, or ratified the tortious conduct of the employee." Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc., 879 P.2d 772, 775 (N.M. 1994) (internal quotation omitted). Pursuant to this standard, the district

court held there was sufficient evidence from which a jury could conclude that

> [David Minder, Sanchez's supervisor,] <u>authorized</u> Sanchez to treat the prison facility with [Conquer] on April 17 even if people were present[;] . . . that Terminix's sloppy procedures and cavalier attitude toward safety and licensing requirements constituted <u>participation</u> in the reckless conduct[; and] . . . that Minder <u>ratified</u> Sanchez's misapplication based on Sanchez's deposition testimony that Minder was more concerned with obtaining proof that the prison was treated than with the injured people.

(II Appellant's App. at 566 (emphasis added).)

Authorization can be inferred from a supervisor's instruction to an employee to perform a procedure, given with the knowledge that safety concerns exist. See Brashear v. Packers, 883 P.2d 1278, 1280-81 (N.M. 1994). Here, Minder instructed Sanchez to spray the prison with Conquer on April 17, 1997. Specifically, he told Sanchez "to go in and fog and crack-and-crevice, try to hit void areas, hit baseboards." (III Appellant's App. at 608.) Upon prior examination of the building, Minder concluded that because of the age of the building, any pesticide sprayed into the brick plumbing voids in the kitchen area had a high risk of escaping or "gas[sing] off" and becoming airborne. (Id. at 863-64.) Yet, when he instructed Sanchez, he failed to raise this risk and advise that no one could safely be present during the application.

Prison officials had told Minder not to spray Conquer with inmates or staff present, but Minder did not communicate that instruction to Sanchez. Instead, he ordered Sanchez

"to go spray using the Actisol [machine] or we're going to lose the contract."[1] (II Appellant's App. at 592.) Loss of the contract was a concern because just a few weeks prior to the incident, prison officials had threatened termination of its contract with Terminix if services did not improve promptly.

When Sanchez was trained to use Conquer by Roger Jiminez, Minder's predecessor, Jiminez sprayed Conquer in the presence of third persons. Sanchez testified that he knew from the label it was dangerous to spray Conquer with people in the area, but it was his understanding from Terminix that even "if [he] showed up to spray Conquer and there were people present," he nevertheless "needed to go up there and use the Conquer machine or [they] would lose this account." (Id. at 591-92.) Terminix "never told" Sanchez that he was not "to spray Conquer in the presence of people," or that if he "showed up for a Conquer application with the Actisol [machine] and there were people present, that [he] should not do the application even if they wanted [him] to do it." (Id.)

On arrival at the prison on the day in question, Sanchez encountered inmates and staff at the application site, but sprayed Conquer nonetheless because he "didn't have any choice because of Mr. Minder's instructions."[2] (Id. at 606.) Sanchez stated he was

---

[1] Terminix contends that only one inference can be drawn from Minder's concern over the loss of the contract—that the job must be done properly or not at all. While this is one inference that could be drawn, evidence supports the conclusion that Sanchez was not so instructed.

[2] There is a material distinction, according to Terminix, between authorizing Sanchez to apply the pesticide on that day and authorizing a tortious application of the pesticide. Terminix claims that Sanchez's tortious conduct was spraying with people

"Oliver North that day . . . just following orders." (Id. at 622.) The jury could reasonably infer from this evidence that Sanchez was authorized to perform the application at the prison even if people were present. See Brashear, 883 P.2d at 1280-81.

Participation can be inferred from policies of the principal that permit the conduct of the agent, see Templin v. Mountain Bell Tel. Co., 643 P.2d 263, 266-68 (N.M. 1982), or from evidence of a general "atmosphere" that permits such conduct, Weidler v. Big J Enters., 953 P.2d 1089, 1101 (N.M. Ct. App. 1997) (holding that "evidence . . . [of] an atmosphere within the corporation that discouraged the expression of safety concerns" supported the inference "that the corporation either approved or participated in [an employee's] termination for expressing safety concerns").[3]

The record demonstrates that Terminix condoned the disregard of safety practices during pesticide applications. In addition to his improper training and instructions,

_____

present, not merely the possibility of an airborne cloud of which Minder was aware. The evidence belies this distinction. The jury could infer from the evidence presented that Sanchez reasonably believed he was instructed to complete the job that day, despite his hesitations upon arriving at the prison and finding people in the area he was about to spray.

[3] Terminix contends that a cavalier attitude toward safety at best establishes negligence, but does not support an award of punitive damages. This assertion misconstrues the applicable law. In support of its proposition, Terminix relies on cases addressing whether particular conduct was negligent. See Gonzalez v. Surgidev Corp., 899 P.2d 576, 588 (N.M. 1995); Hood v. Fulkerson, 699 P.2d 608, 611 (N.M. 1985); Enriquez v. Cochran, 967 P.2d 1136, 1169 (N.M. Ct. App. 1998). Here, Terminix concedes that Sanchez's conduct was negligent. These cases do not address the question of whether Terminix authorized, participated in, or ratified that conduct. With regard to that question, as noted, an atmosphere encouraging the conduct at issue can support an inference of participation. See Weidler, 953 P.2d at 1101.

Sanchez was not properly licensed at the time of the application due, at least in part, to clerical errors at Terminix. Moreover, even though corrections officer Cayetano Trujillo was required to stay with Sanchez during the application, Terminix failed to provide him with the necessary protective clothing such as goggles or a respirator. Immediately after the incident, Trujillo requested the Material Safety Data Sheet ("MSDS"), but it was not in the truck as required. It was the responsibility of management to ensure that the MSDS was in the truck. Based on this evidence, the jury could reasonably conclude that Terminix participated in the conduct of its agent.[4] See Weidler, 953 P.2d at 1101.

Regarding ratification, "[a] corporation can ratify the acts of its agents by acquiescence in or acceptance of the unauthorized acts." Albuquerque Concrete Coring, 879 P.2d at 776 (citing Bank of Santa Fe v. Honey Boy Haven, Inc., 746 P.2d 1116, 1119

---

[4] Terminix's argument that absent any prior warning that an employee is prone to misconduct, a corporation's failure to exercise closer control over its employees does not warrant an award of punitive damages, is without merit. The cases relied on by Terminix for this contention are distinguishable. In Eckhardt v. Charter Hospital of Albuquerque, Inc., 953 P.2d 722 (N.M. Ct. App. 1997), the court only considered whether the conduct at issue was negligent, which Terminix concedes. Its reliance on Sameden Oil Corp. v. Neeld, 577 P.2d 1245, 1249 (N.M. 1978), in which the trial court misinstructed the jury as to the appropriate rule, is likewise misplaced. In Campbell, 975 F.2d at 1581-83, the court held that notations in an employee's file that "he had refused chemical tests in 1974 and 1976 and that he was the subject of a DWI arrest or conviction in 1976" were insufficient to establish that the defendant trucking company had authorized, participated in, or ratified an alcohol-related trucking accident of the employee in 1986. Noticeably absent in Campbell is evidence that the defendant expressly or impliedly instructed the employee to drive his truck while intoxicated, that there was an atmosphere at the company condoning such conduct, or that after the accident, the company in any way ratified the conduct. Such evidence is present here and distinguishes this case from Campbell.

(1987)).  Evidence of ratification includes Sanchez's call to Minder from the prison after the incident.  Sanchez asked Minder to repeat his instructions; Minder again said, "[G]o in and fog and crack-and-crevice, try to hit void areas, hit baseboards."  (II Appellant's App. at 608.)  Claiming "that's exactly what [he] did," Sanchez informed his supervisor that "a few inmates and some office personnel got sick."  (Id.)  Instructing Sanchez not to "worry about it," Minder advised he would "deal with it tomorrow."  (Id. at 593, 608.)  Even though Sanchez informed Minder that people were ill as a result of the application, Minder gave but one instruction: "Make sure that you put on the ticket that you were ordered to stop so that we can get paid for this . . . [and] make sure the signature is on the ticket."  (Id. at 613.)

Sanchez was at a different job site the next day, and no one at Terminix contacted him to inquire about the incident or asked him to prepare a report documenting the same.  At a staff meeting several days later, the matter was not discussed.  After that meeting Sanchez went to his supervisor's office in an attempt to discuss the issue.  Instead of asking for details, Minder said he would "handle it" and again told Sanchez "[n]ot to worry about it."  (Id. at 611.)  Minder admitted that he never did an investigative report on the incident.  Yet another supervisor, Rick Boss, failed to take appropriate action,

instead choosing to regularly joke about the incident by stating that Sanchez was "sav[ing] the taxpayers money" by "getting rid of the inmates." (Id. at 616.)

Relying on Romero v. J.W. Jones Construction Co., 651 P.2d 1302, 1306 (N.M. Ct. App. 1982), Terminix argues that Minder did not know all the details of the events at the prison and therefore never intended to ratify Sanchez's conduct. We disagree. Where, as here, "ignorance of facts arises from a principal's own failure to investigate and the circumstances are such as to put a reasonable man upon inquiry, he may be held to have ratified even though he may have lacked full knowledge." See Tee Mining Corp. v. National Sales, Inc., 417 P.2d 810, 812 (N.M. 1966). Ratification requires "either knowledge of the material facts or circumstances sufficient to put a reasonable person on notice to inquire into these facts," not both. Jessen v. National Excess Ins. Co., 776 P.2d 1244, 1249 (N.M. 1989) (emphasis added), modified on other grounds by Paiz v. State Farm Fire & Cas. Co., 880 P.2d 300, 307-08 & n.6 (N.M. 1994). Minder failed to inquire into the facts of the incident after being put on notice that an application resulted in injury.

We recognize that much of this evidence was disputed by Terminix at trial, but it is within the province of the jury to give testimony whatever weight it deems appropriate after evaluating the credibility of the witnesses. See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000) ("In our review [of a motion for judgment as a matter of law], we may not weigh the evidence, pass on the credibility of

witnesses, or substitute our judgment for that of the jury."). After carefully reviewing the trial transcript, we conclude the district court did not err in upholding the award of punitive damages.

### III

We review for abuse of discretion the district court's denial of a motion for a new trial or remittitur, see Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1261 (10th Cir. 1995), recognizing that the trial court is in the unique position to observe the witnesses and their demeanor as well as the jurors' attitude during the trial, see Grammar v. Kohlhaas Tank & Equip. Co., 604 P.2d 823, 833 (N.M. Ct. App. 1979). Therefore, in determining whether a jury verdict is excessive, we do not "weigh the evidence but determine[] the excessiveness as a matter of law." Chavez-Rey v. Miller, 658 P.2d 452, 454 (N.M. Ct. App. 1982).

The Supreme Court decision in BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996), established three factors in determining whether a punitive damages award is excessive in violation of the Due Process Clause of the Fourteenth Amendment: "the degree of reprehensibility of [defendant's conduct]; the disparity between the harm or potential harm suffered by [the plaintiffs] and [their] punitive damages award; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases."

To determine reprehensibility, we examine whether (1) the defendant's conduct

"evinced . . . indifference to or reckless disregard for the health and safety of others," (2) the defendant "has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful," or (3) the evidence "discloses . . . deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive." BMW of N. Am., 517 U.S. at 576, 579; see also Continental Trend Resources, Inc. v. OXY USA, Inc., 101 F.3d 634, 638-39 (10th Cir. 1996). The evidence supporting our conclusion that Terminix authorized, participated in, or ratified Sanchez's conduct likewise establishes Terminix's indifference to, and reckless disregard for, the health and safety of the plaintiffs. By comparison, in Weidler, 953 P.2d at 603, the court upheld a punitive damages award in part based on its determination that "discharging an employee for reporting safety concerns is particularly reprehensible," even though the injury was economic. Because the atmosphere of condoning disregard of safety concerns resulted in permanent physical injuries to the plaintiffs, we cannot denounce the award as excessive based on lack of reprehensibility.

The ratio between the punitive damages and compensatory damages awarded by the jury is 12 to 1. In reviewing this ratio, we are not guided by a "mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable," but rather by a "general concern of reasonableness." BMW of N. Am., 517 U.S. at 582-83 (internal quotations and citations omitted). If the act is particularly egregious, a "relatively small compensatory damages award[] could logically result in a high ratio of

-11-

punitive damages." Allsup's Convenience Stores, Inc. v. North River Ins. Co., 976 P.2d 1, 18 (N.M. 1998).

The district court concluded that the ratio between the punitive and compensatory portions of the award was permissible because "[e]ach plaintiff presented evidence of injuries that might be permanent and difficult to detect[, f]uture medical costs could be greater that the jury's compensatory award, and it is difficult to assign a cash value to [p]laintiffs' injuries." (II Appellant's App. at 567.) We likewise conclude that a high ratio is justified because the evidence establishes that "the injury is hard to detect [and] the monetary value of noneconomic harm . . . [is] difficult to determine." BMW of N. Am., 517 U.S. at 583. This case does not present the "breathtaking 500 to 1" ratio that "raise[d] a suspicious judicial eyebrow" in BMW of North America, 517 U.S. at 583, as this ratio is not substantially higher than ratios that have "easily [born] constitutional scrutiny." Allsup's Convenience Stores, 976 P.2d at 18 (upholding a ratio of 7.4 to 1); see also Weidler, 953 P.2d at 1102 (upholding a ratio of 8 to 1).

With regard to the last BMW factor, the reviewing court should give "substantial deference to the legislative judgments concerning appropriate sanctions for the conduct at issue" when "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." BMW of N. Am., 517 U.S. at 583 (internal quotation and citation omitted). Federal civil penalties of up to $5,000 per violation, and criminal penalties of up to a $25,000 fine and one year imprisonment, can

be imposed for a knowing violation of any provision of the Federal Insecticide, Fungicide, and Rodenticide Act. See 7 U.S.C. § 1361.[5] Under New Mexico law, such conduct could be punishable with penalties of up to $1,000 per violation, in addition to suspension or revocation of an applicator's license. See N.M. Stat. Ann. § 76-4-34.

Although the punitive damages award is exceptional when compared only to the applicable fines, the authorization of imprisonment in the criminal context can justify a higher award. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23 (1991). Accordingly, comparison of the award to the penalties that could be imposed for comparable conduct does not bring the award "into the area of constitutional impropriety." Id. We therefore reject Terminix's due process challenge to the amount of punitive damages awarded by the jury.

Beyond the constitutional minimum, the Supreme Court of New Mexico has held that "punitive damages do not have to be in reasonable proportion to actual damages, but they must not be so unrelated to the injury as to plainly manifest passion and prejudice rather than reason and justice." Allsup's Convenience Stores, 976 P.2d at 19 (quoting Green Tree Acceptance, Inc. v. Layton, 769 P.2d 84, 87 (N.M. 1989)). There is no evidence that passion or prejudice, rather than reason and justice, influenced the jury in

---

[5] An employee's conduct is deemed to be that of the employer in "every case." 7 U.S.C. § 1361(b)(4).

their award of punitive damages.  See id.  Consequently, we conclude the district court did not abuse its discretion in upholding the amount of punitive damages awarded.

**IV**

We **AFFIRM** the judgment of the district court and **GRANT** Terminix's Motion to Supplement the Record on Appeal.