**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DEBRA YOUREN,

　　　　Plaintiff-Appellee/
　　　　Cross- Appellant,

　　v.

TINTIC SCHOOL DISTRICT,
PATRICIA HUNTER-ROWSE, and
ED ALDER,

　　　　Defendants-Appellants/
　　　　Cross-Appellees.

Nos. 01-4131 and 01-4144

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:98-CV-713-K)

---

Loren M. Lambert, Arrow Legal Solutions, LLC, Midvale, Utah, for Plaintiff-
Appellee/Cross-Appellant.

Brent A. Burnett, Assistant Attorney General, Mark L. Shurtleff, Utah Attorney
General, Salt Lake City, Utah, for Defendants-Appellants/Cross-Appellees.

---

Before **HENRY** , **McWILLIAMS** , and **LUCERO** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

These appeals arise from a case in which the plaintiff was Debra Youren and the defendants were the Tintic School District and two of its employees, superintendent Patricia Hunter-Rowse and teacher Ed Alder. Ms. Youren, a teacher formerly employed by Tintic, brought suit under 28 U.S.C. § 1983, alleging claims for violation of her due process, free speech, and privacy rights, and state-law claims for wrongful termination and violation of the Utah Protection of Public Employees Act (the "Whistleblower Act"), Utah Code Ann. §§ 67-21-1 to 67-21-9. Following a trial, a jury found that Tintic and Ms. Rowse[1] violated Ms. Youren's rights under the Whistleblower Act, and awarded compensatory damages. The jury also found in favor of Ms. Youren on the federal civil rights claims and awarded compensatory damages against both Tintic and Ms. Rowse for those violations as well.

In a post-trial order, the district court denied the defendants' motion for judgment as a matter of law on Ms. Youren's whistleblower claim, holding that Ms. Youren met the 180-day statute of limitations for bringing claims under the Whistleblower Act by filing a timely notice of claim, even though the complaint was not filed until after the 180-day deadline. The district court also denied the defendants' request to vacate the jury's holding against Ms. Rowse, ruling that the

_____

[1] Taking our lead from the parties' briefs, we refer to Patricia Hunter-Rowse as Ms. Rowse.

-2-

Whistleblower Act allowed Ms. Rowse to be sued in her official capacity. The defendants now appeal those rulings, and they also assert on appeal that the district court erred by allowing recovery against both Tintic and Ms. Rowse.

Ms. Youren cross-appeals and challenges the district court's grant of the defendants' motion for a directed verdict dismissing Ms. Youren's claims for punitive damages, as well as the district court's determination of the hourly rate used to calculate the award of attorneys' fees to Ms. Youren.

We affirm the district court in all respects except for its denial of punitive damages. On that issue, we reverse and remand for a trial limited to determining the amount, if any, of punitive damages to be assessed against Ms. Rowse on Ms. Youren's federal civil rights claim.

## I. BACKGROUND

Debra Youren was employed by the Tintic School District as a teacher at West Desert High School in rural Utah. In 1997, Ms. Youren began to express concerns to her colleagues and superiors about the conduct of various teachers in her school. She alleged that a teacher was favoring his polygamist family members and dating one of his students, that another teacher dated and attempted to initiate a sexual relationship with Ms. Youren's daughter and with several male students, that Mr. Alder condoned student absences and indeed encouraged

students to work at his ranch rather than attending school, that polygamist influence at the school had resulted in the adoption of discriminatory practices, as well as a number of other allegations.

Ms. Youren further alleged that, as a result of her whistleblowing activities, Ms. Rowse (the superintendent) and other school district employees retaliated against her with threats, adverse employment reports, requirements that Ms. Youren subject herself to a psychological examination, attempts to use the results of that psychological examination to discredit Ms. Youren, successful efforts to induce Ms. Youren's daughter to fabricate allegations of sexual abuse against her step-father (accusations that were later recanted), and other inappropriate responses.

On March 12, 1998, Tintic sent Ms. Youren a letter notifying her that her employment contract would not be renewed and informing her that she could request an informal conference before the Tintic School Board. Ms. Youren requested a hearing. The hearing was scheduled for April 8, 1998 and then rescheduled to April 23, 1998. The hearing was convened on April 23 but was suspended before it was completed and was never reconvened, for reasons that are not entirely clear from the appellate record. On May 8, 1998, Tintic's attorney informed Ms. Youren that the hearing would not be completed and that no further hearing to challenge the non-renewal of the contract would be held.

-4-

Ms. Youren filed a Notice of Claim with the Utah Attorney General and with Tintic on July 23, 1998. She filed her complaint in federal district court on October 5, 1998, naming as defendants Tintic, Ms. Rowse, and Mr. Alder. Ms. Youren asserted a civil rights claim under 28 U.S.C. § 1983 for violation of her federal rights to due process, free speech, and privacy. She also asserted state law claims under the Whistleblower Act, as well as common law tort claims of intentional infliction of emotional distress and interference with economic relations.

The district court dismissed the tort claims before trial. During the trial, the district court granted the defendants' request that punitive damages not be argued to the jury. The jury found in Ms. Youren's favor on the whistleblower claim, awarding damages against Tintic for $65,000 and against Ms. Rowse for $65,000. The jury also found in favor of Ms. Youren on her federal civil rights claims and awarded damages of $55,500 and $32,500 against Tintic and Ms. Rowse, respectively. Mr. Alder was not held liable.

After trial, the defendants renewed their motion for judgment as a matter of law on Ms. Youren's claims under the Whistleblower Act, claiming that the suit was not timely filed and that Ms. Rowse could not be included as a defendant. Aplts' App. at 82 (Motion for Judgment as a Matter of Law, Renewal of Request, filed Apr. 27, 2001). In denying the defendants' motion, the district court

observed that the structure of the Whistleblower Act "suggests that the filing of the notice of claim satisfies the applicable statute of limitation.  Furthermore, the underlying purpose of statutes of limitation, and likewise the rationale behind the notice of claim, is to give prompt notice before memories fade and evidence is lost."  Aplts' App. at 122 (Dist. Ct. Order, dated June 4, 2001) ("Post-Trial Order").  Echoing the policy rationale behind notice pleading, the court concluded: "Once the State receives a notice of claim it has all of the information regarding the claims against it as a party who has received a Complaint."  *Id.*  The district court further held that because Ms. Rowse was being sued in her official capacity, the verdict and damages awarded against her separately were not void as a matter of law.  *Id.* at 120.

Ruling on Ms. Youren's motions, the district court awarded attorneys' fees and costs totaling $64,783.41.  *Id.* at 124.  In reaching this result, the district court noted that the contingency fee contract between Ms. Youren and her attorney specified a "default rate" of $105 per hour.  *Id.*  After explaining why this rate was reasonable (based on counsel's experience, the matter involved, and comparable market rates), the district court adopted $105 as the hourly rate for its calculations.

## II. ANALYSIS

The defendants' appeal and Ms. Youren's cross-appeal raise five issues. First, did the district court err in denying the defendants' motion asserting that the lawsuit had been filed after the 180-day statute of limitations? Second, did the district court err by exercising jurisdiction over the whistleblower claim against Ms. Rowse in her official capacity, even though Ms. Youren did not file a separate notice of claim against Ms. Rowse? Third, did the district court violate the rule against double recovery in permitting the jury to assess compensatory damages against both Ms. Rowse and Tintic? Fourth, did the district court err in dismissing Ms. Youren's claims for punitive damages? Finally, did the district court abuse its discretion in awarding Ms. Youren attorneys' fees based on an hourly rate of $105.00 per hour?

### A.      The Statute of Limitations and the Pretrial Order

We review the denial of a motion for a directed verdict "de novo, applying the same standards used by the district court." *Bielecki v. Terminix Int'l Co.*, 225 F.3d 1159, 1162 (10th Cir. 2000). A directed verdict is only appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "points but one way and is susceptible to no reasonable inferences supporting the non-moving party." *Id.* (internal quotation marks omitted). Because we are reviewing a

federal court's adjudication of an ancillary state law claim, Utah law controls the substantive analysis of the Whistleblower Act claim–even though federal law controls the ultimate procedural question of whether a directed verdict was warranted. *See Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997).

The Whistleblower Act sets forth the applicable statute of limitations: "[A]n employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief or actual damages, or both, within 180 days after the occurrence of the alleged violation of this chapter." Utah Code Ann. § 67-21-4(2). The parties agree that the statutory filing period started to run on March 12, 1998, when Ms. Youren received notification by letter that she would be terminated. The parties also agree that Ms. Youren's Notice of Claim was filed on July 23, 1998, less than 180 days after the March 12 letter; and that the October 5 filing date of the actual Complaint is more than 180 days after the limitations period began to run.

The district court rejected the defendants' post-trial motion for judgment as a matter of law, holding that Ms. Youren's timely filing of her Notice of Claim was sufficient to serve the purposes of the statute's prompt notification requirements. Aplts' App. at 122 (Post-Trial Order, filed Apr. 4, 2001). The defendants assert that the 180-day time limit cannot be met by merely filing a Notice of Claim, but rather that the claim itself must be filed within 180 days.

Ms. Youren argues that the defendants waived the statute of limitations issue and, in the alternative, that the district court correctly held that Ms. Youren satisfied the statute of limitations by filing her Notice of Claim well before the statutory deadline.

We need only address the merits of the defendants' argument if we determine that they preserved the statute of limitations issue. We therefore address the question of waiver, which in turn involves two inquiries: first, whether the statute of limitations can be waived at all, and if so, was it waived here?

1. Is the Statute of Limitations Defense an Affirmative Defense?

Under Federal Rule of Civil Procedure 8(c), a defense is waivable if it is an affirmative defense. *See Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) ("Failure to plead an affirmative defense results in a waiver of that defense.") (citing Fed R. Civ. P. 8(c) and 2A James W. Moore, *et al.*, Moore's Fed. Prac. ¶ 8.27(3) (2d ed. 1994)). Rule 8(c) of both the federal and the Utah rules of civil procedure states: "Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, . . . statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." Fed R. Civ. P. 8(c); Utah R. Civ. P. 8(c) (emphasis added).

"Interpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are 'substantially similar' to the federal rules." *Tucker v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 947, 949 n.2 (Utah 2002).

Although we hold on independent grounds that the statute of limitations is an affirmative defense, it is noteworthy that the defendants themselves initially treated it as such. *See* Aplts' App. at 12 (Defendants' Answer to Plaintiff's Amended Complaint and Demand for Jury Trial, filed Jan. 19, 1999) ("FOURTH AFFIRMATIVE DEFENSE: Some of Plaintiff's claims are barred by the relevant statute of limitations") (capitalization in original). The defendants nevertheless argued to the district court that the statute of limitations is an "element" of Ms. Youren's case and not an affirmative defense. Aplts' App. at 66-67 (Proposition of Law Memorandum re: It is an Element of Plaintiffs' Case to Show She Filed Her Whistleblower Action Timely, filed Mar. 23, 2001). The parties renew that argument here.

Several of our sister circuits have indeed created an exception to Rule 8(c), holding that there are situations in which a statute of limitations acts as a "condition precedent" to the suit rather than as a classic affirmative defense. *See Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 547 (6th Cir. 1986); *Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1117-18 (5th Cir. 1983). Because

Rule 8(c) explicitly lists the statute of limitations as an affirmative defense, we are hesitant to carve out an exception absent strong reason to do so.

The exceptions noted by the defendants are tied to unique features of the specific statutes at issue in those cases. In *Ford Motor*, for example, the Sixth Circuit noted that "[t]he nine month filing provision of the Uniform Bill of Straight Lading at issue emanates from 49 U.S.C. § 11707(e)(1982), which provides that '[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim. . . .'" 795 F.2d at 547. The court ruled that this makes the statute of limitations "an element of the cause of action." *Id.*

Similarly, in *Emmons*, the Fifth Circuit held that the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., imposed a burden on the plaintiff to file a claim within the three-year statute of limitations, 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."). The court construed that language to mean that "[f]ailure to timely bring suit not only bars the claimant's remedy, but it also destroys the employer's liability." 701 F.2d at 1117. Both circuits relied upon *Goodwin v. Townsend*, 197 F.2d 970, 971 (3d Cir. 1952), which states that when a "statute of limitations is thus made a limitation upon the continued existence of the right, rather than a mere bar to suit upon it," it is not an affirmative defense and cannot be waived.

-11-

The Whistleblower Act phrases its statute of limitations permissively, specifying that an employee "may bring a civil action for appropriate injunctive relief or actual damages, or both, within 180 days." Utah Code Ann. § 67-21-4(2). This language indicates that the existence of the public employee's right (the right, that is, not to suffer adverse action for reporting legal violations) is not predicated on the filing of suit within the limitations period, but simply that the right may not be vindicated if suit is not timely filed. Thus, the limitations period here is "a mere bar to suit upon" Ms. Youren's rights. *Goodwin*, 197 F.2d at 971. The statute of limitations defense is thus a classic affirmative defense and not a "condition precedent" to the suit.

Accordingly, the statute of limitations defense is an affirmative defense and is subject to waiver. *See Bentley*, 41 F.3d at 604.

### 2. Was the Statute of Limitations Defense Waived?

Having determined that the statute of limitations defense is a waivable affirmative defense, we must determine whether the defendants, in fact, waived it in this case. It is true that the defendants here initially pled the statute of limitations defense, at least in general terms. *See* Aplts' App. at 12. The defendants also filed a motion during the course of the trial, again raising the statute of limitations issue. Aplts' App. at 55 (Motion for Directed Verdict, filed

Mar. 23, 2001) ("The undisputed facts developed at trial show that plaintiff failed to timely file her claims"). Neither of these facts, however, overcomes the Pretrial Order Rule, embodied in Rule 16(e) of the Federal Rules of Civil Procedure:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice. An order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation.

The resulting pretrial order "measures the dimensions of the lawsuit, both in the trial court and on appeal." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997) (internal quotation marks omitted). "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be." *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th Cir. 1995) (internal quotation marks omitted). In assessing whether an issue was preserved where it was omitted from a pretrial order, we have held that because a party "did not include this issue in the pre-trial report, . . . it was not part of the case before the district court." *Gowan v. United States Dep't of Air Force*, 148 F.3d 1182, 1192 (10th Cir. 1998).

Although the defendants included the statute of limitations as an affirmative defense in their answer to the complaint, they did not identify the statute of limitations issue in the pretrial order. Notably, there is a section of the pretrial order with the heading "CONTESTED ISSUES OF LAW," under which the defendants listed three purely legal questions–but the statute of limitations issue was conspicuously not among them. Aplts' App. at 48 (capitalization in original). Even more notably, the pretrial order was evidently prepared exclusively by the defendants. *See* Aplts' Reply Br. at 3 n.1 ("No joint pretrial order was prepared in this matter."); Aplts' App. at 53 (pretrial order with the signatures of Tintic's counsel and the judge, but not that of Ms. Youren's counsel).

In *McGinnis v. Ingram Equipment Co.*, 918 F.2d 1491 (11th Cir. 1990), the Eleventh Circuit considered facts similar to those present here, where a party raised an issue in its first responsive pleading but then omitted reference to the issue in the pretrial order. The court ruled: "[I]n the pretrial order, which supersedes the pleadings . . . , [the defendant] abandoned its 'failure to state a claim' defense. . . . Thus, the issue was not preserved in the district court." *Id.* at 1494.

The defendants point to *Calderon v. Witvoet*, 999 F.2d 1101 (7th Cir. 1993), for the proposition that a statute of limitations defense is not waived by

-14-

failure to include it in the pretrial order. *Calderon* does, indeed, conclude that a statute of limitations defense was not waived by failure to include it in a pretrial order, 999 F.2d at 1108, but it does so on the basis that the district court in that case had already ruled against the defendants on that issue. The Seventh Circuit thus concluded: "Nothing in the Rules of Civil Procedure tells counsel that to preserve issues for appeal they must insert into the pretrial order contentions that have already been rejected by the judge." *Id.* As the defendants themselves note here, the district court did not rule on the statute of limitations issue until after trial. Hence, the statute of limitations was a "live" issue when the pretrial order was drafted before trial, and *Calderon* is thus not applicable.

The statute of limitations issue, therefore, "was not part of the case before the district court." *Gowan*, 148 F.3d at 1192. We thus hold that the defendants waived their statute of limitations affirmative defense by omitting the issue from the pretrial order, and we decline to reach the merits of the defendants' argument on this issue.

**B.    Subject Matter Jurisdiction Over Claim Against Ms. Rowse**

In their post-trial motion in the district court, the defendants argued that the court lacked jurisdiction over the claims against Ms. Rowse "because the Whistleblower Act does not allow a cause of action against an individual, only the

employer." Aplts' App. at 123 (Post-Trial Order). The district court rejected this argument, noting that the Whistleblower Act's definition of an employer includes "'an agent of the employer.'" *Id.* (quoting Utah Code Ann. § 67-21-2(4)). "Therefore," the district court continued, "this court holds that Plaintiff's cause of action against Defendant Rowse is brought against her in her official capacity and there are no statutory or other sound bases to vacate the jury award entered against her." *Id.*

On appeal, the defendants argue that because Ms. Youren did not file a separate notice of claim against Ms. Rowse, the district court should have declined to exercise jurisdiction over Ms. Youren's whistleblower claim against Ms. Rowse. We review issues of subject matter jurisdiction de novo. *United States v. One Parcel Prop. Located at Lot 85, County Ridge*, 100 F.3d 740, 742 (10th Cir. 1998). The defendants are correct that in whistleblower suits involving a government entity, compliance with the notice requirements is jurisdictional. *See generally Hall v. State Dep't of Corr.*, 24 P.3d 958, 966 (Utah 2001) (holding that dismissal of claims is proper in a whistleblower suit against a government entity when the plaintiff fails to adhere to notice requirements).

When a suit is brought against a school district and against school officials in their official capacity, the Utah Governmental Immunity Act requires only that the notice of the claim be served on the school district. "Any person having a

-16-

claim for injury against a governmental entity, or against its employee . . . shall file a written notice of claim with the entity before maintaining an action." Utah Code Ann. § 63-30-11(1) (emphasis added). The notice of claim, even if against an employee, must be filed with the entity itself.

The defendants do not argue that notice to the school district was inadequate or untimely served, nor that the claim did not list Ms. Rowse. Therefore, the defendants' argument that because Ms. Youren did not file or serve her notice of claim on Ms. Rowse, there was no subject matter jurisdiction established over Ms. Youren's claim against Ms. Rowse, is baseless. Accordingly, the district court had subject matter jurisdiction over Ms. Youren's whistleblower claim against Ms. Rowse.

**C.     Are Official Capacity Damages Against Ms. Rowse Impermissible "Double Recovery"  ?**

The defendants argue that the district court's award of official capacity damages against Ms. Rowse on the whistleblower claim resulted in an impermissible "double recovery against [the] school district." Aplts' Br. at 8. Because Ms. Rowse was sued only in her official capacity, and because she is an "agent" of the school district, the defendants argue that the district court erred in permitting both names to be placed on the jury verdict form. The defendants suggest that the school district itself was, "in reality, placed on the jury verdict

-17-

form twice: once under its own name and a second time under the name of one of its employees being sued in her official capacity." *Id.* at 17. The defendants argue that "[t]o permit awards against both the employer directly and indirectly" thereby sanctions a double recovery, and that we should instruct the district court to dismiss those claims and the resulting $65,000.00 in damages against Ms. Rowse. *Id.* at 18.

The district court in this case explicitly instructed the jury not to award duplicative damages:

> You must not award compensatory damages more than once for the same injury. For example, if Plaintiff prevails on two claims and establishes a dollar amount for her injuries, you must not award her additional compensatory damages on each claim. Plaintiff is only entitled to be made whole once and may not recover more than she has lost or suffered. Of course, if different injuries are attributed to the separate claims, then you must compensate Plaintiff fully for all of her injuries.

Aple's App. vol. I, at 12 (Jury Instruction No. 36).

We presume a jury has followed the court's instructions. *See Mason v. Oklahoma Tpk. Auth.*, 115 F.3d 1442, 1456 (10th Cir. 1997). The defendants do not allege that the district court judge inappropriately or inadequately instructed the jury. Therefore, we assume that the jury followed these instructions. *See Macsenti v. Becker*, 237 F.3d 1223, 1235 (10th Cir. 2001) ("[T]here was no contention of improper or inadequate instructions to the jury, . . . [and thus a]

-18-

double recovery argument fails because courts must assume that the jury performed its duty in accordance with those instructions.") (internal quotation marks omitted).

We are, moreover, persuaded by Ms. Youren's argument that these instructions allowed the jury to apportion its damages so that Ms. Rowse could be publicly sanctioned for having violated the Whistleblower Act. We therefore reject the defendants' argument on this issue.

### D.    Punitive Damages

On cross-appeal, Ms. Youren challenges the district court's dismissal of her claims for punitive damages. The defendants moved during trial to exclude punitive damages. Aplts' App. at 59 (Motion for Directed Verdict, filed Mar. 23, 2001). After a discussion in chambers discussing a wide variety of issues, the district court heard oral arguments from the parties regarding punitive damages. The defendants argued that there was insufficient evidence to support a punitive damages verdict, and Ms. Youren argued that sufficient evidence could be presented. *See* Aplts' App. at 159-63 (Transcript of Proceedings, dated Mar. 26, 2001). After listening to these and other arguments, the district court ultimately ruled: "[P]unitive damages [are] out." *Id.* at 172.

Because a district court's determination that insufficient evidence existed to support punitive damages is a question of law, we review that determination de novo. *See Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1269 (10th Cir. 2000).

1. Applicability of Punitive Damages to the Different Defendants in this Case

Before addressing the substance of Ms. Youren's concerns, we must first consider the applicability of punitive damages to the different defendants in this case. Both 42 U.S.C. § 1983 and Utah law bar punitive damage awards against municipal agencies such as Tintic. *See Miller v. City of Mission, Kansas*, 705 F.2d 368, 377 (10th Cir. 1983) ("'[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.'") (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)); Utah Code Ann. § 63-30-22(1)(a) ("No judgment may be rendered against the government entity for exemplary or punitive damages.").

We therefore affirm the district court's dismissal of claims for punitive damages against the school district under both federal and state claims. The fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune. The jury found that Ms. Rowse's actions violated Ms. Youren's federal civil rights

and violated the Whistleblower Act. On de novo review, therefore, we must decide whether Ms. Youren's evidence against Ms. Rowse met the standard for punitive damages. As such, we must review whether the district court's blanket ruling disallowing punitive damages on all claims in this case was appropriate.

Because we now know that the jury found that Mr. Alder was not liable, however, no punitive damages can be imposed on him for state or federal claims. *See* Utah Code Ann. § 78-18-1(1)(a) ("[P]unitive damages may be awarded only if compensatory or general damages are awarded."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269 (1981) (noting that § 1983 "allow[s] juries and courts to assess punitive damages in appropriate circumstances against the <u>offending</u> official, based on his personal financial resources") (emphasis added). Therefore, although Mr. Alder could have been subject to punitive damages under the same conditions as Ms. Rowse, the jury's holding makes it unnecessary to consider the applicability of punitive damages to Mr. Alder.

 2.  Availability of Punitive Damages Under the Whistleblower Act

The Whistleblower Act does not specifically provide for punitive damages, nor does it explicitly rule them out. *See* Utah Code Ann. § 67-21-5(1) ("A court, in rendering a judgment in an action brought under this chapter, may order reinstatement of the employee at the same level, the payment of back wages, full

reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies.") The wording of the statute, however, makes it clear that the list of remedies is meant to be exclusive–listing four specific remedies or a combination of them. Under the doctrine of *expressio unius est exclusio alterius,* to "express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary (7th ed. 1999). "The notion is one of negative implication: the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 (10th Cir. 2003).

In interpreting Utah law, we are of course guided in the first instance by the pronouncements of that state's highest court. The Utah Supreme Court has expressed some reservations about the application of the *expressio unius* doctrine. "[T]his principle is only an aid to statutory interpretation; it is not a rule of law, and it has only limited application." *Cullum v. Farmers Ins. Exch.*, 857 P.2d 922, 924 (Utah 1993). "Indeed, we have recognized that it is a valuable servant, but a dangerous master." *Monson v. Carver*, 928 P.2d 1017, 1025 (Utah 1996) (internal quotation marks omitted). In *Monson*, the court rejected an *expressio unius*-style reading of the state constitution and held that "the absence of the term 'restitution' from the constitutional provision setting forth the [Parole] Board's

powers does not preclude the Board from ordering restitution as a condition of parole." *Id.* This conclusion, however, was predicated on the court's previous holdings that the constitution grants "plenary authority on the Board to impose conditions of parole, <u>even absent legislation</u> specifying particular conditions." *Id.* (emphasis added).

Here, the state legislature failed to mention punitive damages, one of the two basic types of damages, in a law that authorized various specific forms of relief (reinstatement, back pay, seniority rights, and actual damages). *See* Utah Code Ann. § 67-21-5(1). Indeed, the legislature twice mentioned "actual damages" without mentioning punitive damages. *See id.*; Utah Code Ann. § 67-21-4(2) ("An employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief or actual damages, or both.) We are therefore unwilling to read punitive damages into a statute that does not expressly authorize them.

### 3. Availability of Punitive Damages for Violations of Federal Law

Unquestionably, "[p]unitive damages are available in § 1983 actions [and] are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Jolivet v. Deland*, 966 F.2d 573, 577 (10th

Cir. 1992) (internal quotations marks and citations omitted). The focus must be on whether the defendant's actions call for "'deterrence and punishment over and above that provided by compensatory awards.'" *Id.* (*Smith v. Wade*, 461 U.S. 30, 54 (1983)). "[P]unitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1519 (2003).[2]

We take seriously the purpose of punitive damages, i.e., "to punish what has occurred and to deter its repetition." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991). Ms. Youren's evidence in the record, if believed, appears to us to reflect actions that *should* be deterred and punished. Ms. Youren's efforts to bring to light the questionable activities at her school were allegedly met with contempt, hostility, and anger. Ms. Rowse decided to have Ms. Youren undergo a psychological examination–a "request" that was accompanied by a threat that "[f]ailure to follow this request will constitute insubordination," Aple's App. vol. I, at 23 (Letter from Ms. Rowse to Ms. Youren, dated Sep. 10, 1997). If a jury were to find these acts to be unjustified, punitive damages could be appropriate.

---

[2] *Campbell* provides the most recent guidance from the United States Supreme Court on the issue of punitive damages. Although the Court there invalidated a punitive damages award for being excessive, *see* 123 S. Ct. at 1521, and for being based on actions beyond the purview of state courts, *see id.* at 1522, that decision nonetheless clearly reaffirms the purposes for which punitive damages have always been used.

Especially in the context of a public school and its role in educating and caring for the nation's youth, it is extremely important to protect those who shine a light on unsavory and illegal practices–risking their careers in the knowledge that their colleagues will be anything but grateful for those efforts. This case involved allegations that children were being seduced by adult authority figures, and that the defendants induced a false accusation of sexual assault against a child's step-father. Depending upon which of these allegations the jury believed, the jury might well conclude that malice existed, that there was reckless or callous indifference to Ms. Youren's rights, etc. In short, a jury could view this as being sufficient to justify an award of punitive damages. *See, e.g., Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999) (upholding jury award for punitive damages in retaliatory discharge case under 28 U.S.C. § 1981).

We therefore hold that, because there was sufficient evidence for a jury to consider the possibility of awarding punitive damages against Ms. Rowse, the district court erred in preventing the jury from considering the imposition of punitive damages on her. On remand, the district court should hold a trial limited to the issue of punitive damages for the federal claims, permitting the jury to consider awarding such damages against Ms. Rowse.

**E.    Attorneys' Fees**

Finally, Ms. Youren challenges the district court's decision to use a $105 hourly rate in calculating attorneys' fees.  For 28 U.S.C. § 1983 actions, we review both a district court's award of attorneys' fees and the amount awarded for an abuse of discretion.  *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).  "Under this standard, we may reverse a district court's factual findings only if the are clearly erroneous, but we review the court's statutory interpretations or other legal conclusions de novo."  *Id.*  The reasonableness determination is a mixed law-fact application to which we apply the general abuse of discretion standard.  *See id.*

Ms. Youren argues that the district court's hourly rate determination was unreasonable given the five-year span of the litigation, suggesting that the district court failed to take into account the increases in attorneys' fees over that time period.  Ms. Youren, however, fails to provide any record evidence on the issue of attorneys' fees. "Because [the appellant] failed to reference the record in support of its contentions, we will not consider them or sift through the record in support thereof, but instead defer to the district court's rulings."  *Mile High Indus. v. Cohen*, 222 F.3d 845, 853 (10th Cir. 2000).  Accordingly, we will defer to the district court's determination that Ms. Youren's counsel's hourly rate should be set at $105, as set out in the terms of the contingency fee contract.

### III. CONCLUSION

Accordingly, we AFFIRM the district court on all claims, with the exception of its ruling that the jury could not impose punitive damages against Ms. Rowse under federal law. On that issue, we REVERSE and REMAND for proceedings consistent with this ruling.

No. 01-4131, 01-4144 ,   *Youren v. Tintic School District, et. al.*

**McWILLIAMS, J** ., dissents, in part.


Youren's claim under the Utah Whistleblower Act was not filed in the United States District Court for the District of Utah within 180 days of her date of discharge.  The majority holds that because the 180 day statute of limitations contained in the Utah Whistleblower Act was not set forth in the district court's pre-trial order, the defendants thereby waived that particular defense to Youren's claim based on the Act.  Under the described circumstances set forth below, I disagree with the majority's holding that as a matter of law the defendants waived that defense and I would remand with directions that the district court first consider and, after hearing, make the initial determination as to whether the defendants in fact waived the 180 day statute of limitations contained in the Act.

I agree that the 180 day statute of limitations in the Act was not mentioned in the pre-trial order, though it had been pled by the defendants in their answer.  Notwithstanding, the 180 day statute of limitations was in fact a contested issue during the trial of the case and in post-trial motion.  At trial, the defendants moved for a directed verdict on Youren's Whistleblower claim on the grounds that Youren had failed to bring her action within the 180 day requirement.  The district court denied defendants' motion for directed verdict, stating that "I think these are basically legal issues, and if I need to decide some things after trial, I will."  On this particular matter, in denying defendants' motion for judgment

n.o.v., the district court ruled that because plaintiff filed a Notice of Claim with the Utah Attorney General and with the School District within 180 days from her date of discharge, there was compliance with the Act's requirement that any claim under the Act may be filed with a court within 180 days from plaintiff's date of discharge. (I have doubt as to the correctness of the district court's holding on this matter). The district court did not rule on the question of waiver. I would much prefer that under these circumstances the district court should first grapple with the statute of limitations issue.