**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARSHAD AZIM,

     Plaintiff - Appellant,

v.

TORTOISE CAPITAL ADVISORS, LLC;
H. KEVIN BIRZER; MICHELLE KELLY;
MARTY BICKNELL; TABITHA
BOISSONNEAU; MARINER
HOLDINGS, LLC; FAMBRAN
ENTERPRISES,

     Defendants - Appellees.

No. 16-3235
(D.C. No. 2:13-CV-02267-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

    Plaintiff-Appellant Arshad Azim appeals the district court's grant of summary

judgment in favor of Defendants-Appellees Tortoise Capital Advisors, LLC, H.

Kevin Birzer, Michelle Kelly, Marty Bicknell, Tabitha Boissonneau, Mariner

Holdings, LLC, and Fambran Enterprises in this employment law dispute. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

   [*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Arshad Azim is an experienced financial services professional, having gained experience at firms in Chicago and Kansas City since 1998. Vol. V at 1034–36. He was born in Kashmir, immigrated to the United States to attend college in Michigan, and then spent approximately 13 years in the financial services industry in Chicago. Id. In 2011, he accepted a position as the Vice President of Business Development at Tortoise and moved to Kansas City to be closer to family. Id. at 1036. Azim was the only Vice President in the Business Development department at Tortoise, and he reported directly to Michelle Kelly, the Director of that department. See id. at 1075.

After working at Tortoise for eight months, Azim found his interactions with Kelly had become increasingly difficult, and he began to view his position with Tortoise as "unbearable." See id. at 1101–02. By Monday, April 16, 2012, he had concluded that he could no longer take it because he felt "humiliated" and had "lost respect" for himself. Id. at 1103, 1109. The stress of the situation had reached such a point that he had "dysentery and [a] headache," and he was unable to attend work. Id. at 1044. He stated in an email to the human resources manager the following day that he had been harassed by Kelly for a "7-month period," was in a "hostile work condition," and felt "threatened at work!" Vol. II at 429–30.

Azim continued to interact with Tortoise's human resources department several times in the ensuing days. Vol. I at 95; Vol. II at 405. On Friday, April 20, 2012, Azim and his counsel met with the human resources team at Tortoise and Azim elaborated on his concerns regarding Kelly and the Tortoise management team. Vol.

2

II at 417–55.  He also suggested ways that Tortoise could alleviate or resolve those issues.  Id. at 458.  Ten days later, Azim met with the Senior Managing Director of Tortoise, who informed Azim that Tortoise was terminating Azim's employment because of "distinct differences in how the company should operate."  Id. at 419–21.

A little more than a year later, Azim filed this action.  Vol. I at 3.  Although Azim was represented by counsel when he met with Tortoise's human resources manager prior to his termination, he chose to proceed pro se before the district court.  Vol. VI at 1450–52.  After multiple amendments, Azim's final and controlling complaint alleged violations of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(1) (hereinafter "Title VII"), 15 U.S.C. § 78u-6(h)(1)(A)(i), and 42 U.S.C. § 1985.  Vol. I at 48–49.

The parties then conducted discovery and prepared for summary judgment and/or trial.  As part of that process, Azim and Tortoise exchanged drafts and jointly prepared a proposed Pretrial Order, which the district court adopted and entered on April 20, 2015.  Id. at 108–31.  The Pretrial Order stated that it "supersede[d] all pleadings and control[led] the subsequent course of this case."  Id. at 108.  In the Pretrial Order, Azim's claims against the Defendants were:

> Count I
> Defendants terminated plaintiff's employment in violation of Section 1981 by discriminating against him based on racial background/ethnicity.
>
> Count II
> Defendants terminated plaintiff's employment in violation of Title VII, specifically, by discriminating against him based on religion.

3

Count III
Defendants terminated plaintiff's employment in violation of Dodd-Frank, specifically, by retaliating against him with abject disregard to the whistleblower protection the Act affords.

Count IV
Defendants interfered with plaintiff's civil rights by obstructing justice in violation of Section 1985(3).

Id. at 121–22.

The Defendants subsequently filed a motion for summary judgment, which the district court granted. Vol. VI at 1324–67. In its order granting Defendants' summary judgment motion, the district court concluded that the Pretrial Order controlled the scope of Azim's claims. Id. at 1363–64. The district court held that Azim's Title VII or § 1981 retaliation claims were not preserved because they were not included in the Pretrial Order. The district court granted the Defendants summary judgment on those claims.[1] Id. The district court also held that Azim had not demonstrated a triable issue of fact regarding any of his preserved claims, and granted summary judgment in the Defendants' favor on those claims as well. This timely appeal follows.

---

[1] In the alternative, the district court held that Azim's retaliation claim—if he had stated it—would have failed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis. Vol. VI at 1364.

4

## II

On appeal, Azim only argues that the district court erred in granting summary judgment on his Title VII and § 1981 retaliation claims, see Aplt. Reply Br. at vi,[2] which the district court held Azim had waived by omitting those claims from the Pretrial Order. "Because the district court is in the best position to interpret its pretrial order, our standard of review on appeal is abuse of discretion." Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th Cir. 1997).

The Pretrial Order entered in this case was based upon Federal Rule of Civil Procedure 16(e), which states:

> The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

The pretrial order that is finalized following a pretrial conference "measures the dimensions of the lawsuit, both in the trial court and on appeal." Tyler, 118 F.3d at 1403 (citation omitted). That is, if a claim is omitted from the pretrial order, that claim is "not part of the case before the district court." Gowan v. United States Dep't of Air Force, 148 F.3d 1182, 1192 (10th Cir. 1998).

Azim admits that he did not specifically include Title VII or § 1981 retaliation claims in his list of claims in the Pretrial Order. Aplt. Br. at 45. But he argues that

---

[2] At oral argument, Azim's counsel reiterated that Azim is only challenging the district court's decision regarding the Title VII and § 1981 retaliation claims.

5

by including references to Title VII and § 1981 discrimination he cured that deficiency. Yet, the Supreme Court has held that "antidiscrimination and antiretaliation provisions are indeed conceptually distinct, and serve distinct purposes." Gomez-Perez v. Potter, 553 U.S. 474, 495 (2008). Therefore, Azim needed to explicitly set out a retaliation claim to preserve retaliation as a pending claim, and his reference to Title VII and § 1981 discrimination was insufficient.

Azim also argues that he specifically referenced his retaliation claims elsewhere in the Pretrial Order. His factual contentions, as set forth in the Pretrial Order, contain two references to retaliation, but both refer to claims that Azim is not pursuing in this appeal. The first, that Azim "was retaliated against after reporting" misrepresentations, fraudulent representations, and false Security and Exchange Commission filings, related to Azim's "Count III," which includes a cause of action under the Dodd-Frank Act. Vol. I at 113; see also Vol. VII at 1571 (the district court found that this sentence "clearly references [Azim's] Dodd-Frank Act retaliation claim, not a Title VII or § 1981 retaliation claim.").

Azim's second reference to retaliation in his factual contentions is more ambiguous. It alleges that, "[i]n retaliation, to cover up the plethora of intentionally contrived illegalities, [Azim] was tampered with as a witness (by obstructing justice before, during and after he was fired) by proactively seeking his attendance—under false pretenses—at the meeting during which he was threatened to sign a release agreement and then fired." Vol. I at 113. In context, though, the reference to "obstructing justice" indicates this sentence refers to Azim's § 1985(3) claim, which

6

Azim set out as "Count IV" in the Legal Claims section: "Defendants interfered with plaintiff's civil rights by obstructing justice in violation of Section 1985(3)." Vol. I at 122. We agree with the district court's conclusion that the two sentences Azim included in the factual contentions of the Pretrial Order were "mere references to retaliation, without more, [and] fail to demonstrate that plaintiff asserted a Title VII or § 1981 retaliation claim." Vol. VII at 1571. We also note that these references to retaliation in relation to Azim's Dodd-Frank and § 1985(3) counts did not alert Azim to the need to identify his Title VII and § 1981 counts as retaliation claims in the Legal Claims section of the Pretrial Order.

Further, Azim and Tortoise exchanged drafts of the Pretrial Order. In those drafts, Tortoise included two affirmative defenses to Azim's retaliation claims. Yet, those references did not cause Azim to include Title VII or § 1981 retaliation claims in the Legal Claims section of the Pretrial Order. Azim also had the opportunity to discuss the Title VII and § 1981 retaliation claims at the April 2, 2015 pretrial conference. See Vol. VII at 1486–1537. Azim did not identify those claims at that time, or alert the district court in any way that he intended to pursue Title VII and § 1981 retaliation claims.

Finally, Azim argues that he could not be expected to know the difference between discrimination and retaliation because he was a pro se litigant—albeit a very sophisticated pro se litigant. It is true that "however inartfully pleaded" a pro se filing may be, the court must use "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972). However, this

7

court has also held that "it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). If Azim sought to include Title VII and § 1981 retaliation claims it was his responsibility to state those claims and not rely on the district court to propose potential claims on his behalf.

We conclude that the district court did not abuse its discretion when it held that Azim had not preserved his Title VII and § 1981 retaliation claims because he failed to include them in the Pretrial Order.

### III

The district court's grant of summary judgment to the Defendants is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge